7 U.S. 180
 3 Cranch 180
 2 L.Ed. 404
 LEVY
v.
GADSBY.
 February Term, 1805
 
 1
 ERROR to the circuit court of the district of Columbia, sitting at Alexandria.
 
 
 2
 This was an action of assumpsit, by Levy, the indorsee of a promissory note, against Gadsby, payee and indorsor of M'Intosh's note.
 
 
 3
 The declaration consisted of three counts. The 1st, in addition to the common averments, alleged, that the plaintiff had brought suit upon the note against M'Intosh, in Maryland, and recovered judgment, but that before execution made M'Intosh died insolvent. The 2d count was in the usual form, excepting that it alleged that Gadsby, became liable by the custom of merchants. The 3d count was for money had and received. The defendant pleaded, 1st. Non assumpsit. 2d. As to the first count, usury between M'Intosh and Levy, stating the transaction as a loan, by the latter to the former. 3d. As to the first count, usury between the same parties, stating the transaction as a forbearance of an antecedent debt. The 4th and 5th were like pleas of usury to the 2d count. The 3d and 5th pleas, by mistake, alleged the note given, in pursuance of the corrupt agreement, to be a note made by Gadsby to M'Intosh, and by him indorsed to Levy; whereas, the note in the declaration mentioned, was a note made by M'Intosh to Gadsby, and by him indorsed to Levy. To the pleas of usury, there were general replications and issues, and a general verdict for the defendant. On the trial three bills of exception were taken by the plaintiff.
 
 
 4
 1st. The first stated, that the plaintiff gave in evidence, a promissory note in the usual form, dated November 1, 1797, whereby M'Intosh, six months after date, promised to pay to Gadsby, or order, 1,436 dollars, 62 cents, for value received, negotiable at the bank of Alexandria. And it was proved that Levy and M'Intosh carried on trade and commerce in copartnership, under the name and firm of Levy and M'Intosh, at Alexandria, Levy residing at Georgetown, about 8 miles distant from Alexandria. That they so continued to carry on trade and commerce from sometime in the year 1796, till the 12th day of November, 1797, on which day the partnership was dissolved; and that the dissolution was advertised in the public papers, on the 19th of October, 1797, to take place on the said 12th day of November, 1797. And the defendant, to support the issues on his part, offered in evidence, a paper in the hand-writing of the plaintiff, and by him subscribed, as follows:
 
 
 5
 'Georgetown, November 9th, 1797. Received of Mr. John M'Intosh, his two notes, one payable to John Gadsby for fourteen hundred and thirty-six dollars, sixty-two cents, dated the first instant, negotiable at the bank of Alexandria, at six months after date, indorsed by said Gadsby; the other to Thomas J. Beatty, of same date, at three months after date, for twelve hundred and seventy dollars, eighty-seven cents, negotiable at the bank of Columbia, and indorsed by said Beatty. The two notes making the sum of two thousand seven hundred and seven dollars, forty-nine cents, which, when paid, is on account of money due me from the firm of Levy and M'Intosh, equal to two thousand two hundred and ten dollars, twenty-four cents, as by their account, handed me by said M'Intosh, dated October 23d, 1797; and as the said M'Intosh agrees, he is receiving an interest equal to the difference, twixt the sum due me, as per their account current, and the notes payable, he, therefore, allows me the same interest as the one he is receiving for my money. Therefore, on a settlement of accounts, I am only to stand debited for twenty-two hundred and ten dollars, twenty-four cents, $2,210 24 due as per account current; $497 25 interest; $2,707 49.
 
 
 6
 N. LEVY.'
 
 
 7
 The plaintiff's counsel objected to the said writing being given in evidence by the defendant, on the pleas of usury, and the court refused to permit it to go in evidence on those pleas. The plaintiff's counsel then objected to its going in evidence on the general issue of non assumpsit, but upon that issue, the court admitted it.
 
 
 8
 2d. The 2d bill of exceptions, after repeating the same facts, states, that the plaintiff's counsel prayed the opinion of the court, and their instruction to the jury, whether the circumstances given in evidence as aforesaid, amounted to proof of an usurious contract between Levy and M'Intosh; and the court, thereupon, instructed the jury, that those circumstances did amount to proof of an usurious contract between those parties.
 
 
 9
 3d. The 3d bill of exceptions was to the opinion of the court, that the agreement mentioned in the receipt given by Levy to M'Intosh, having been read in evidence, and having been, by the court, declared an usurious agreement, the note given in pursuance thereof, is void, and that the plaintiff is not entitled to recover thereon, against the defendant, in the present action.
 
 
 10
 Swann and Simms, for plaintiff in error. C. Lee, Mason, and Jones, for defendant.
 
 
 11
 The questions arising in this case are,
 
 
 12
 1st. Whether the court below was correct in instructing the jury, that the agreement contained in Levy's receipt, was usurious.
 
 
 13
 2d. Whether that receipt was admissible in evidence upon the issue of non assumpsit; and
 
 
 14
 3d. Whether it was admissible upon either of the other issues.
 
 
 15
 Swann, for plaintiff in error. 1. As to the usury. The court below undertook to say, that the agreement and other circumstances, amounted to conclusive proof of usury, when it ought to have been left to the jury, under all the circumstances of the case, to say whether the contract was usurious or not.
 
 
 16
 There appears to have been a partnership in usury, between Levy and M'Intosh. During that partnership, M'Intosh had loaned Levy's money at usury, and on the 23d of October, 1797, was indebted to Levy in the sum of 2,210 dollars, 24 cents, for money thus lent out at 3 and 6 months. And being satisfied that he should receive that money at those periods, he was willing to bind himself absolutely to pay it over to Levy, whose money it in truth was. This, we say, is the true construction of the receipt. It is no more than the case of an agent binding himself to pay over, at a particular time, the money of his principal, which shall at that time be in his hands.
 
 
 17
 To constitute usury under the act of assembly, Revised Code of Virginia, p. 37 there must be either a loan of money, or forbearance of a debt already due. In this case there was neither a loan from Levy to M'Intosh, nor a debt due from M'Intosh to Levy. Cowper, 115, Floyer v. Edwards. A note given without consideration is not usurious. M'Intosh was to receive the money at a certain time, and pay it over to Levy. This is the whole of the contract. He only bound himself expressly to do what, in equity and conscience, he ought to do. At the time the notes were given, if Levy had sued M'Intosh for the money, it would have been a sufficient answer to say that M'Intosh had not received it.
 
 
 18
 If I authorise a man to lend 1,000 dollars of my money on usury for my benefit, and he does so, and has received 500 dollars for such usury, can I not compel him to pay it over to me? This is really the only question upon the merits of this case; and this seems to be decided by the case of Faikney v. Reynous, 4 Burr. 2069, and that of Petrie v. Hannay, 3 T. R. 418, in which it was held that if two be engaged in a transaction illegal, but not malum in se, and one of them pay the whole money, he may recover a proportion from the other, if this other has expressly promised to pay it. From hence it may be inferred, that although the original transaction between M'Intosh and the person to whom he lent the money on usury was illegal, and although Levy knew all the circumstances, and assented to the transaction, yet, inasmuch as it was not malum in se, and M'Intosh agreed to pay over the money to Levy when received, the illegality of the original transaction shall not discharge M'Intosh from such agreement, or render it void.
 
 
 19
 Simms, on the same side. An objection was made in the court below, to allowing usury to be given in evidence on the plea of non assumpsit, but it was overruled by the court. If there had been no other plea, perhaps the question would be doubtful; but when the defendant has pleaded usury in a particular way, he ought not to be permitted to resort to a different kind of usury. Tate v. Wellings, 3 T. R. 538. It tends to surprise and entrap the plaintiff.
 
 
 20
 C. Lee, contra.
 
 
 21
 1st. Whether usury can be given in evidence on non assumpsit.
 
 
 22
 Every thing which goes to show that the contract is void, may be given in evidence on that plea; for if the promise was void when made, then, in law, it was no promise. Str. 498, Bernard v. Saul. 2 Str. 733, Burrows v. Jemino. 1 Esp. Rep. 178.
 
 
 23
 There being two special pleas of usury makes no difference, the court having been of opinion that the evidence did not support those pleas.
 
 
 24
 2d. As to the construction of the agreement. If the usury is reserved for forbearance of a debt already due, it is the same thing as if reserved on an original loan. 1 Call, 74, 81, Gibson v. Fristoe. And it makes no difference whether the usurious interest is stated to be received from others or not. Usury is not to be covered by such devises as that. It is only an indirect way of receiving the usury.
 
 
 25
 No argument can make the transaction plainer, than it is stated in the receipt itself. Res ipsa loquitur.
 
 
 26
 Mason, on the same side. There can be no ground for the plaintiff to allege surprise in the admission of the receipt as evidence on the general issue. The special pleas set forth precisely the same facts, and nothing but a blunder in copying the pleas, and inserting the name of M'Intosh for Gadsby, prevented the evidence from being admitted on those pleas.
 
 
 27
 The agreement is, that as M'Intosh is receiving usury from others, therefore he will pay it to the plaintiff. If the debtor receives usury from his debtors, it is no justification of the creditor in demanding from him.
 
 
 28
 There is no evidence that the partnership of Levy and M'Intosh was a partnership in usury.
 
 
 29
 The receipt does not directly aver that M'Intosh is receiving the rate of interest mentioned. It only states that he agrees he is receiving it. A man may agree to a false statement of facts; and, indeed, that is always the case, when usury is attempted to be covered.
 
 
 30
 Jones, on the same side. The evidence offered was not only applicable to the general issue, but to the first special plea of usury. The agreement shows it to be a loan in the sense of the statute.
 
 
 31
 No precedent can be found of a plea of usury which does not state it as a loan.
 
 
 32
 The cases cited do not apply. The agreement itself does not state it to be accounting for profits received. But M'Intosh gives an absolute note for the payment of money, although it is agreed that it is outstanding.
 
 
 33
 The question is upon a written agreement, and the construction of all such agreements is exclusively with the court.
 
 March 4.
 
 34
 MARSHALL, Ch. J. delivered the opinion of the court.
 
 
 35
 It was slightly contended by the counsel for the plaintiff in error, that when usury has been specially pleaded, and the evidence adduced to support such plea has been adjudged by the court to be inapplicable to the facts so pleaded, the same evidence cannot be admitted upon the plea of non assumpsit. No cases in support of this position have been cited, and it does not appear to be supported by reasoning from analogy. In cases where there are special and general counts in a declaration, and the evidence does not support the special counts, the plaintiff is allowed to apply the same evidence in support of the general counts. On a parity of reasoning, the defendant should be permitted to give in evidence upon the plea of non assumpsit, the same facts which were adjudged inapplicable to the special pleas, but which might have been received on the general plea, if the special pleas had not been pleaded.
 
 
 36
 The counsel for the plaintiff has also contended, that although the paper-writing produced would, on the face of it, import a usurious contract, yet, as the jury might possibly have inferred from it certain extrinsic facts, which would have shown the contract not to have been within the act, the jury ought to have been left at liberty to infer those facts. But in this case the question arises upon, a written instrument, and no principle is more clearly settled, than that the construction of a written evidence is exclusively with the court.
 
 
 37
 This court is of opinion, that the court below has correctly construed the instrument upon which the question arose, and that, therefore, there is no error in the judgment.
 
 
 38
 Judgment affirmed, with costs.