*221 The opinion of the court was delivered by
Gibson, J.
This is a case of less than ordinary difficulty j Evans and Negley were partners in the erection and business of a steam-mill, on terms of dividing the profits, and bearing equal parts of the expense. Shortly after the mill was in operation, they agreed that Negley should take all the profits, pay the debts, (except a debt due by the firm to Evans himself,) and pay Evans eight thousand five hundred dollars for'his interest in the property, when it should be convenient; and, in the mean time pay him a u yearly rent” as the parties expressed it, of six hundred and forty dollars ; being a sum greater than lawful interest for the purchase money. It was further stipulated, that any part of the purchase money which might be paid, should abate the rent pro tanto ; and that Negley was to release all demands which he had against Evans, and that Evans should convey the steam mill immediately. The contract was reduced to writing, and the judge who tried the cause, directed the jury that the transaction was usurious.
It has been faintly pressed, that the matter ought to have been left to the jury as a question.of intention. There undoubtedly are cases (and those which have been cited to the point, are all of the kind,) in which the contract rests, partly in writing, and partly in parol, and in which the actual intention of the parties is left to the jury, with a direction to find the contract, valid or not, as they should think the transaction to be, in' truth what it purports to be, or a cover for usury. But this arises from a rule by no means exclusively applicable to cases of this sort, that in contracts resting altogether in parol, or partly in parol and partly in writing, the meaning of the parties is to be determined by the jury ; but that where the contract is in writing, their meaning is to be determined by the court. In Levy v. Gadsby, 3 Cranch, 180, where the contract supposed to be usurious was in writing, the .point was decided on this principle. There may, however, be cases in which the intention will depend on circumstances, extrinsic to the written contract; as in Buckley v. Guildbank, Cro. Jac. 677, the written contract was rendered usurious by the blunder of an agent; but then, there must be evidence of extrinsic facts. Still the court must, in all cases, decide what the construction of the written contract is on its face, and how far that construction is affected by the facts which the jury shall suppose to be established. In the case before us, it does not appear that there was evidence of any extrinsic fact whatever.
It has also been urged, that there can be no usury where there has been no loan, and the English cases certainly go that length. But a difference might be taken, were it necessary, between the provisions of the several acts of parliament, all of which in terms require that there should be a loan; and our Act of Assembly, which declares the offence to consist in taking more than the legal rate of interest, u for the loan or use of money.” But there *222 can be no question that where the price of a thing is permitted to be retained for the accommodation of the purchaser, it is as purely a loan as if it had been paid to the seller in the first instance, and formally returned to the purchaser. In Pollard, v. Scholy Cro. Elis. 20, such a transaction was held to be a loan within the purview of the English statutes.
The only • difficulty in the case, arises from the parties having called the sum to be paid annually by Negley, a rent. Strike out that word and the contract will present as clear a case of usury as any that can be imagined. But could a rent in fact be reserved ? A rent, for what? Not for the steam mill, for that was to be conveyed to' Negley in fee. It could not be a rent charge, purchased with the eight thousand, five hundred dollars; for there was nothing definite or permanent in the estate, or interest, that might foe supposed to be given in return for it, as Negley could at any time repay the eight thousand, five hundred dollars, and discharge himself from the payment of the annual sum. And beside, it is inconsistent with the notion of a rent charge, that after the estate of the grantee is spent, the consideration which he gave for it, should be returned to him. The reason why an annuity or rent charge may, where the transaction is bona, fide, be purchased at a higher rate per cent, than the interest of the price of it, is because it is an estate which, by the .depression of money in the market, or the happening of any other contingency, may become more valuable than the original price, with the produce of it at interest, and therefore the excess above legal interest is considered to be given, not as a compensation for the use of the purchase money (for that is not to be returned at the expiration of the estate, but is paid absolutely) but for the chance of enhancement in value of the estate or interest acquired: nothing of which could happen here, for ■whenever such a crisis in the valué of money should arrive, Negley would find it to his interest to pay off the purchase money and divest every thing like a permanent interest in the payment of an annual sum. This circumstance always operates strongly against the lawfulness of the transaction; as in Hooper v. Lowly, (3 Atk. 278,) where it was held that if a power of redemption be inserted, although only on one side, it is a strong circumstance to show the transaction to be not a purchase, but a loan, although it is admitted not to be conclusive. But it is difficult to believe, that the parties here intended to reserve a rent, after the premises should be conveyed. It is just as probable that they intended to reserve a compensation for the profits that were expected from the business to be carried on by Negley ; which, as the partnership was to be dissolved, would be absurd. No one who reads the agreement, can hesitate to pronounce, that, by the name of a rent, they in fact meant to stipulate for a compensation for the use of the purchase money which was to be retained. Else, why provide that the rent, if it were such, should abate entirely or pro tanto, as *223 the purchase money in whole or in part should be paid ? The single circumstance that the rent was to endure no longer than the purchase money for the premises should remain outstanding, is conclusive that it was the purchase money and not the premises, for the use of which Negley was to make compensation; and if this be the true construction of the contract, there is an end of the question.
This conclusion is decisive also of the second question in the writ of error brought by Evans, which is altogether subordinate to the first. As the transaction must be taken to have been a loan of money at interest, and noc the purchase of a rent or annuity, no pretence exists for a demand of interest on the sum, payable annually.
With respect to the point arising on the writ of error, brought by Negley, it is sufficient to say, the evidence contained in his bill of exceptions, was clearly incompetent to show failure of consideration. Performance by Evans of his covenants, in the previous articles of copartnership, was no part of the consideration of the purchase by Negley. The partnership and the purchase were separate and distant transactions, which created separate and distinct responsibilities; and these, in turn, afforded separate and distinct remedies. Had set off been pleaded, or notice of it given under the equitable plea of covenants performed, a curious question would have arisen, whether damages for a breach of the covenant, to provide an engine of sufficient power to grind at the rate of twenty bushels the hour, might be set off against the purchase money. It is supposed that the construction of our act of assembly has been more liberal than that of the statute of G. 2, but whether compensation for the breach of a covenant in articles of copartnership, would not involve examination of all the partnership transactions, and thus become too intricate and complicated for the subject of a cross demand, to say nothing of the damages being unliquidated ; or whether it would be recoverable at all before a settlement of the partnership account, are considerations which would induce a judge to pause. But, as to this, we at present intimate no opinion, as on the pleadings, .set off was out of the question, and the defendant relied on the breach of this covenant, as furnishing a defence exclusively on the ground of want of consideration. As therefore neither party has succeeded in his writ of error, the judgment is affirmed.
Judgment affirmed.