JOSIAH NEWMAN, Administrator, *vs.* LEWIS WILLIAMS et al.

The principle is well settled, that where a note is made without any reference to a usurious loan or raising of money, and is complete and valid in the hands of the holder, it may be sold for a sum less than its value, and at a rate of discount that would render it usurious if it had entered into the original transaction, and that the holder is entitled to recover upon it.

But in order to render the transfer valid, it must be a *bonâ fide* sale of the paper upon a consideration paid or secured, and not in anywise a security for the usurious loan of money by the indorsee or party taking the paper or note of the party from whom he receives it, and it must not be taken at a usurious interest or discount in consideration of forbearance and giving time of payment for a debt due the party receiving it; for if it be transferred either upon a loan at unlawful interest, or as a security for a preëxisting debt agreed to be forborne at an illegal rate of interest, it falls within the statute against usury.

Where L. W. was indebted to N., and being unable to make payment, N. proposed to give him time for payment if he would allow him ten per cent. upon the amount then due, to which L. W. acceded, and thereupon transferred to him the note in controversy on W. & W., together with two others to the amount of L. W.'s debt, and ten per cent. added thereto up to the time of payment allowed by the arrangement, and the notes constituting L. W.'s original indebtedness were discharged and delivered up to him:— *Held*, that this transaction, by which N. was to receive more than the legal rate of interest for "the forbearance and giving day of payment" of the debt due him, is fully within the prohibition of the statute. Hutch. Co. 641, § 1.

The assignee or indorsee of a note who has derived title to it by means of an illegal contract, cannot maintain an action upon it, even where the note itself is valid and free from objection as between the original parties to it.

The same rule must apply where the illegality of the consideration extends only to a part of the demand, as in the present case, where the contract of transfer is illegal and void only as to interest; and the defence must prevail, so far as to prevent the recovery of all interest. *Carlton* v. *Robertson,* 14 S. & M. 18, cited and confirmed.

Under the provisions of our statute, the plaintiff can recover nothing but the principal of his debt on a usurious contract.

Mr. Justice Fisher, *dissent.* — It is a general rule, that where a debtor indorses the note of a third person to his creditor corresponding in amount with the debt, or if the note be credited so as thus to correspond, and the original evidence of debt is taken up, that such indorsed note is intended by the parties to operate as a payment of the previous debt. *Held,* that whenever a bill or note in its inception is a real transaction, so that the payee or promisee may at maturity maintain a suit upon it, a transfer by indorsement on a discount, though beyond the legal rate of interest, shall be regarded as a sale of the note or bill, and a valid and legal transaction.

Mr. Justice Fisher, *dissent.* — The contract, so far as N.'s title to the notes is concerned, was completely executed the moment the indorsement was complete; and he was authorized to sue on them, and he ought to recover the full amount in controversy.

On appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

This was a bill filed in vice-chancery court at Natchez by Newman, administrator, &c., against Mary Williams, S. B. Williams, Lewis Williams, G. G. Torry, and J. W. Darden, and the bill charges that on the 24th November, 1840, Mary Williams and Stephen B. Williams made their note for $5,000 in favor of Lewis Williams, due 1st January, 1848; and on the same day they made a mortgage, to secure this note and others, to said Lewis Williams.

On the 25th November, 1840, Lewis Williams transferred this note by indorsement to complainant's intestate, Reuben B. Newman. The note is credited with $100.

On the 17th December, 1845, after Williams had transferred the note to complainant's intestate, Williams entered acknowledgment of satisfaction upon the mortgage. This is charged to be void as to complainant.

The prayer of the bill is to make Mary, Stephen B., and Lewis Williams defendants and for process, and for decree that the money be paid; and in default thereof, for foreclosure and sale of the mortgaged property, and for general relief.

Answer of Mary and S. B. Williams admits they made the note and mortgage as charged, and that no part thereof has been paid.

Answer of Lewis Williams admits the making of the note and mortgage as charged; says that in 1839 he purchased negroes on a credit from complainant's intestate, and in payment thereof gave his three notes to complainant's intestate, each for $1,500, one due 1st January, 1841, one due 1st January, 1842, and the other due 1st January, 1843. After the first note matured, he found he could not pay it, and he proposed to Newman to return the slaves and cancel said notes. Newman refused, and said he did not want money; that all he wanted was ten per cent. interest on his money, and that he would give several years to pay the notes, if defendant would pay that rate of interest. Finding that Newman would not take the slaves back, defendant finally concluded to pay said rate of interest.

The whole amount of the three notes of $1,500 was then calculated at ten per cent. interest from their maturity, $1,000 to be paid 1st January, 1846, $1,000 January 1, 1847, and the balance 1st January, 1848, making an aggregated sum of about $6,900, about $2,300 of which was interest calculated at ten per cent.

For the purpose of paying this sum of $6,900, defendant transferred to said Newman three notes of said Mary and Stephen Williams, one for $1,000, due 1st January, 1846, one for $1,000, due 1st January, 1847, and said note of $5,000 named in complainant's bill.

He insists that in the settlement with Newman, he transferred paper to him to the amount of $2,300 more than he is bound to pay or complainant should receive; that $2,200 was the interest on what the defendant owed Newman, calculated at ten per cent. per annum, which interest was illegal and usu-

rious.   The other two notes of $1,000 have been paid, and he insists that said $2,300 of interest shall be deducted from the $5,000 note, and he is willing to pay the balance.

Says he saw Newman in October, 1846, and talked with him about the note, and that Newman admitted that illegal and usurious interest had been charged; that he entered satisfaction on the mortgage by mistake, not to defraud any one.

Torry and Darden, who purchased a part of the mortgaged property, answered.

The court decreed in favor of Williams et al., and Newman appealed.

*Thrasher* and *Sellers*, for appellees.

The defence in this case is usury; and yet there is no foundation for such defence.   The simple question is, Was there any usury in the body of the note sued on?   Was there any loan of money at a usurious rate of interest, and that interest incorporated into the body of the note?   Was there any given day of payment or of forbearance at a usurious rate of interest, whereby the debt was renewed, and that interest embodied in the face of the note?   Was the note valid in its inception, and has it been illegally altered since?   Was the note a real and substantial business note, and had it a valid foundation for its origin?   Had the note been negotiated by the makers and put into circulation at the time complainant bought it?

If these questions be answered in the affirmative, the defence must fail.   Even in an action at law, against drawers and indorsers of such a note, usury could not be made out upon the facts; because it is a case of the purchase and discount of a note already negotiated and put into circulation by the makers, and having its legal foundation and origin in a pure valuable consideration.   But the court is particularly reminded, that this suit is a proceeding *in rem*, to do what?   Not to enforce the contract, as between Williams and Newman, although that contract is valid; but it is a proceeding to force the makers of the note to comply with their contract made with Williams, which contract they admit to be legal by their answer, and which contract has been assigned to complainant's

intestate. Complainant's intestate took this note as money in payment of a debt due him.

His debt was founded upon the sale of a lot of negroes, and it is admitted that the notes which he had made in payment of the purchase of those negroes were valid, and unaffected with any thing illegal. The note sued on in this case, and which complainant's intestate took as money at a discount in payment of his debt, is founded upon the purchase of a plantation and negroes, and the drawees admit in their answer that they justly owe it. Now where is the usury? Had not Lewis Williams the right to sell this note upon any terms he chose? Surely he had, because he was the owner of it. It had been delivered, negotiated, and put into circulation upon a valuable consideration by the makers. Had not Newman the right to buy it at a discount, or to take it at a discount in payment of a debt due him? Surely he had, because it had been negotiated by the makers.

This proposition is equally true, even if the transaction between Williams and Newman had been usurious. Williams and Newman have settled. The old debt is paid. We are not trying to recover upon that; but we are trying to make the drawees of the note pay for the land and negroes they bought. It is immaterial to them what we gave for the note. It is sufficient that they obtained value for it.

" As between the makers and assignee, it is immaterial what the latter pays for the note. The price he pays does not diminish the maker's liability. The maker contracts to pay so much, and by the assignment the assignee becomes entitled to the amount of the note." *Turner* v. *Branen*, 3 S. & M. 438.

A note valid in its inception, may be sold at a discount greater than the legal interest, and yet be enforced against the maker, such transactions not being usurious. See 17 Conn. 441 ; 8 Cow. 669; *Ring* v. *Johnson*, 3 McCord, 365; 2 Dall. 92.

The defence set up is nothing more nor less than a suit brought by the Williams family to recover back money paid by Lewis Williams upon one of his transactions alleged to be usurious. In the first place, such a suit could only be brought by a direct action at law by Lewis Williams. In the second

place, Stephen and Mary Williams could not bring such a suit, because they have paid nothing, neither principal, interest, nor usury. In the third place, the extent of recovery in such suit is merely the excessive interest paid. This is the universal law in such cases.

But how can a man pay usury, when he is paying a valid debt? Williams's notes to Newman were valid. They were never changed or renewed. They were paid and cancelled. So says Hoopes. They were paid by taking the note sued on at ten per cent. discount, so says Purnell, the man who made the calculation and was present at the settlement. Williams transferred the note in payment of his debt. The indorsement on the back of the note shows this, when taken in connection with the testimony of Purnell. There is no proof that Williams was required to guarantee the note, or to indorse it further than to perfect Newman's title to it, and the indorsement indicates strongly that it was made for that purpose. Purnell's testimony proves it. He does not prove that there was ten per cent. interest in his calculation. He says the note was discounted at ten per cent. He is defendant's witness, and makes this answer to their question about the settlement.

The payment cannot be made usurious. But if it could, the drawees could not set it up in any suit. Lewis Williams cannot set it up in this suit.

The distinction between the purchase of a note, and a loan upon it by way of discount, is well settled. A note which has been negotiated by the maker, and might if at maturity be enforced against him by the holder, may be sold at a greater discount than the rate of seven per cent., without involving the purchaser in the penalties of usury. But the note must be perfect and available to the holder to make it salable by him. The test is, the right to maintain an action upon it against the parties to it, if it was then due. 8 Cow. 685.

The sale of a negotiable note, free from usury when made, and available as a good note before sale, at a greater discount than legal interest, is not usurious, although indorsed by the party making the sale. *French* v. *Grimble,* 3 Shep. 163; *Lane* v. *Stewart,* 2 App. 98.

Thus, whenever the note or bill in its inception was a real transaction, so that the payee might at maturity sue upon it, a transfer by indorsement, though beyond the legal rate of interest, shall be regarded as a sale of the note or bill, and a valid and legal transaction. 7 Pet. R. 107; 2 Johns. Ca. 60; 3 Ib. 66; 15 Johns. R. 44.

The question whether a contract is usurious or not, is to be decided with reference to the time when it was entered into; a contract legal at such time cannot be made usurious by subsequent events. Pollard v. Baylors, 6 Munf. 433.

There are two cardinal rules regulating the doctrine of usury: 1, to constitute usury, there must be a loan in contemplation by the parties; 2, a contract which in its inception is unaffected by usury can never be invalidated by any subsequent usurious transaction. Nichols v. Fearn, 7 Pet. 109; 3 Dev. 30.

For otherwise, a contract wholly innocent in its origin, and valid and binding upon every legal principle, is rendered valueless, and a party to whom the provisions of the act against usury could never have been intended to run, would be discharged of a debt which he justly owes to some person. 7 Pet. 110.

The contract and security for usury are void only as between the original parties, or where the suit is upon the very instrument infected with the usury. Jackson v. Dewy, 10 Johns. R. 185. A stranger to a contract cannot take advantage of the fact that it is usurious. 1 Barb. 271.

But the obligor cannot take advantage of a usurious contract between the assignor and his assignee. Littell v. Lord, Hard. R. 81; 2 Munf. 36; 1 Bay, 456; 3 McCord, 365; 5 Rand. 33; 2 Hen. & Munf. in the case of Kenner v. Reid.

Usury between the indorser and indorsee in the transfer of a negotiable note, only affects the promise of the indorser, and cannot be set up in defence in an action by the indorser against the maker; consequently, the indorsee cannot be admitted as a witness to prove such usury. Knight v. Putnam, 3 Pick. 184.

For what purpose is Williams, Lewis Williams, made defendant to this bill? He is not sought to be made liable for debt. None of his property is sought to be sold. He is made

defendant solely because there are other notes in the mortgage secured to him thereby. Those notes have all been paid, and he don't deny it, or ask any protection for them. His indorsement on the mortgage shows they are paid. Complainant having a perfect right to the note by purchase and transfer, or by receiving it as money, is entitled to the decree sought.

Lewis Williams has no interest in this controversy. He is merely a formal party, introduced for the purpose of foreclosing against the other notes. Complainant's title to the note sued on is admitted in the answers, proven by the depositions of Hoopes and Purnell, and proven by the indorsement on the note. There is no failure of consideration; no illegal consideration in the note. It was made and negotiated before complainant's intestate bought it. His title to it was perfect. It stood then just as it now stands. It has never been renewed or altered since it was first uttered. What Newman gave for it, or what mode of calculation he may have adopted to ascertain what he was willing to give for it, cannot taint or impair its consideration, or affect the result of this case.

We therefore ask this court to reverse the decree of the superior court of chancery, and to render the decree which the southern district chancery court ought to have rendered, namely, that the mortgaged premises be sold for the satisfaction of said note and interest of $5,000 due to complainant's intestate, and the full amount of principal and interest due in and by said $5,000 be paid over to complainant.

No counsel appeared for appellees.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill filed by the appellant in the district chancery court at Natchez, and taken by appeal to the superior court of chancery, from which it is brought here. It is a bill to foreclose a mortgage, and the case made by the record is as follows: —

In November, 1840, Mary Williams and Stephen B. Williams executed their promissory note to Lewis Williams for five

Newman *v.* Williams et al.

thousand dollars to become due in January, 1848, and at the same time executed a mortgage to secure this note and others. Shortly after this, Lewis Williams transferred the note by indorsement and delivery to the complainant's intestate, and this bill is filed against the mortgagors and mortgagee to foreclose the mortgage.

The defendants set up the defence of usury, and it appears that in the year 1843 or 1844, Lewis Williams was indebted to Newman, the complainant's intestate, $4,500, and he not being prepared to pay it, Newman proposed to give him time for payment, if he would pay him ten per cent. interest on the debt; which was agreed to by Williams, and a calculation was made for one thousand dollars payable 1st January, 1846, one thousand dollars payable 1st January, 1847, and the balance to be paid 1st January, 1848, amounting in the whole to $6,800, the interest included in or discounted from the notes, being calculated at ten per cent. and amounting to about $2,300. For the payment of the amount thus calculated, Williams indorsed to Newman three notes made by Mary Williams to him, one for one thousand dollars payable 1st January, 1846, one for one thousand dollars payable 1st January, 1847, and one for five thousand dollars payable 1st January, 1848, the last being credited by two hundred dollars, and these being the notes secured by the mortgage; and thereupon the debt of Lewis Williams to Newman was discharged by delivering up his notes. The notes transferred by Williams to Newman are shown to be legal and valid as between the maker and payee, and the two notes for one thousand dollars are admitted to be paid.

The vice-chancellor decreed to the complainant the original debt due at the time of the transfer of the notes by Lewis Williams, with legal interest at eight per cent. upon the original notes of Lewis Williams to Newman, and to Lewis Williams the residue of the mortgage debt, restoring the parties to their rights as they existed before the transfer of the notes, and ordered a foreclosure.

Upon appeal, this decree was reversed in the superior court of chancery and the cause was ordered to be remanded for fur-

ther proceedings; but no directions are given as to principles upon which further proceedings should be taken, or as to the grounds of reversal.

From this decree, this appeal is prosecuted.

The only question for consideration is, whether the note sought to be enforced is liable to the defence of usury under the circumstances of the case.

There is no pretence that any usury existed in the note as it stood between the maker and payee, and before the transfer to the complainant's intestate. And it is, therefore, insisted in behalf of the appellant that, as it was a valid note, founded upon a legal consideration, and complete between the parties without reference to the use to which it was subsequently applied, and in that condition was purchased by the appellant's intestate, the defence of usury cannot prevail. Let us examine these positions, and see how far they are applicable to the facts here presented.

The first point to be settled is, whether Newman can be held to be a purchaser, and his right to the note protected on that ground.

We consider the law to be well settled, that when a note is made without any reference to a usurious loan or raising of money, and is complete and valid in the hands of the holder, it may be sold for a sum less than its value and at a rate of discount that would render it usurious if it had entered into the original transaction, and that the holder is entitled to recover upon it. This principle has been much considered in the courts of this country; and though there are decisions to the contrary, it is sustained by the great weight and number of authorities. *Munn* v. *Commission Company*, 15 J. R. 44; *Powell* v. *Waters*, 8 Cow. 685; *Nichols* v. *Fearson et al.* 7 Peters, 103; *Callin* v. *Nevill*, 3 Dev. 30; *French* v. *Grindle*, 15 Maine (3 Shep.), 163; 3 McCord, 365.

But in order to render the transfer valid, it must be a *bonâ fide* sale of the paper, upon a consideration paid or secured, and not in anywise a security for the usurious loan of money by the indorser or party taking the paper to or on account of the party from whom he receives it, and it must not be taken at a

19*

usurious interest or discount in consideration of forbearance, and giving time of payment for a debt due the party requiring it; for if it be transferred, either upon a loan at unlawful interest, or as a security for a preëxisting debt agreed to be forborne at an illegal rate of interest, it falls within the statute against usury. The first branch of this proposition is sustained by all the cases above cited; and the latter branch of it is supported by the cases in 7 Peters, 103; *Gaither* v. *Farmers and Mechanics Bank*, 1 Peters, 37; *Levy* v. *Gadsby*, 3 Cranch, 180.

Let us apply these principles to the circumstances of this case.

It appears that Lewis Williams was indebted to Newman, and being unable to make payment, Newman proposed to give him time for payment, if he would allow him ten per cent. upon the amount then due; to which Williams acceded, and thereupon transferred to him the note in controversy, together with two others, to the amount of Williams's debt and ten per cent. added thereto up to the time of payment allowed by the arrangement, and the notes constituting Williams's original indebtedness were discharged and delivered up.

It is plain that this was not a purchase by Newman of the notes transferred to him, in the sense of the rule. It was proposed as a mode of giving time of payment, and was carried out as such, in order to give indulgence to Williams and ten per cent. interest to Newman. The discharge of the original indebtedness of Williams did not change the nature of the transaction, for Williams still gave interest at the rate of ten per cent. for the indulgence and forbearance given him by transferring the notes, including that amount to Newman. It was, therefore, clearly a transaction by which Newman was to receive more than the legal rate of interest for "the forbearance and giving day of payment" of the debt due him, and is fully within the prohibition of the statute. Hutch. Dig. 641.

The contract of transfer of the note being, therefore, usurious, it remains to be considered whether the makers of the note can set up a defence on that ground to the suit of the indorsee, there being no usury in the note at the time of the transfer.

This presents the simple question, whether the assignee or

indorsee of a note who has derived title to it by means of an illegal contract, can maintain an action upon it when the note itself is valid and free from objection as between the original parties to it.

It is immaterial in questions of this nature, what may be the obligation of the defendant to pay. The first question to be settled is, whether the plaintiff has a right to recover; and it is unquestionably true, that if his title be founded on an illegal consideration, he cannot be heard in a court of justice to assert a right under it. This principle has been repeatedly applied by this court to cases of illegal contracts. In the case of *Adams* v. *Rowan et al.* 8 S. & M. 638, the notes of Adams to Runnels, founded on a valid and sufficient consideration, were transferred by Runnels to Rowan & Harris for an illegal consideration; and it was held that the maker could set up the illegality of the consideration paid by Rowan & Harris, in defence of a suit brought by them upon the notes. In that case the defence went to the entire suit. The same principle is held in the case of *Gaither* v. *Farmers and Mechanics Bank*, 1 Peters, 37.

When the illegality of the consideration extends only to a part of the plaintiff's demand, as in the present case, where the contract of transfer is illegal and void only as to interest, the same rule must apply, and the defence must prevail so far as to prevent the recovery of all interest. Because where the consideration is illegal as to a part of the demand, the defence must prevail to that extent upon the same principle by which the whole action is defeated where the entire claim is rendered void by illegality of consideration. This rule is fully recognized in *Coulter et al.* v. *Robertson*, 14 S. & M. 18; and it is now settled beyond controversy in this court, that, under the provisions of our statute, the plaintiff can recover nothing but the principal of his debt on usurious contracts.

In this case a question of some difficulty arises as to who is entitled to the interest on the note.

We have seen that the complainant is not entitled to recover it; and there is no just reason why the makers should not pay it according to their contract. If it had been usurious interest paid by Lewis Williams to the complainant's intestate, upon a

transaction in which they alone were involved, Lewis Williams, upon general equitable principles, would have been entitled to ,recover back only the excess paid over the legal interest. *Parchman* v. *McKinney*, 12 S. & M. 639. But there has been no payment, and the contract is executory. As no interest can be recovered by the complainant, the transfer to that extent being void, it must either belong to Lewis Williams, or the makers of the note be released of all interest, which they do not claim, but allege that it should go to Lewis Williams.

It appears, therefore, proper that it should be decreed to Lewis Williams, he being a party to the suit.

The decree of the chancellor reversing the decree of the vice-chancellor is affirmed, and a decree ordered in favor of the appellant for the amount of the principal due upon the note without interest, and in favor of Lewis Williams for the amount of interest due thereon, and for a foreclosure accordingly; and that Lewis Williams pay the costs.

Mr. Justice FISHER delivered the following dissenting opinion: —

Declining a concurrence in the opinion of the majority of the court, the importance of many of the questions involved in this case, aside from the provisions of the statute, leaving me without discretion on the subject, requires that I should state fully the reasons and principles of law, which have operated to bring my mind to a conclusion different from that arrived at by my brethren.

The bill was filed by the complainant, as administrator of the estate of Reuben B. Newman, deceased, in the vice-chancery court at Natchez, for the purpose of foreclosing a mortgage executed by Stephen D. and Mary Williams, to Lewis Williams, with a view of securing him in the payment of the note now in controversy.

The mortgagors and mortgagee, all being made parties to the bill, set up by their respective answers, the defence of usury, growing out of the indorsement of the note, by Williams the payee and mortgagee, to Newman, the complainant's intestate.

The facts as connected with this defence are briefly as fol-

lows: Lewis Williams, previous to January, 1843, was indebted to Newman in the sum of $4,500. Not having the money in hand with which to pay this debt, Williams transferred to Newman the note now in controversy, together with two others, amounting in the aggregate to seven thousand dollars, all made by Stephen D. and Mary Williams, and secured by them by a mortgage upon their property. Upon making this transfer by Williams, his notes held by Newman were delivered up and cancelled; Williams, however, indorsing in the usual manner the notes which were transferred. The first of these notes, for one thousand dollars, fell due the 1st of January, 1846; the second, for the same amount, the 1st of January, 1847; and the third, being the one now in litigation, for five thousand dollars, the 1st of January, 1848.

In carrying out this arrangement, interest was calculated on the amount of Newman's debt at ten per cent. per annum up to the several periods when the notes above mentioned matured, and being added to the principal made the aggregate sum of $6,800; whereupon a credit was entered on the note of five thousand dollars, for two hundred dollars, so as to make the balance due on the notes, correspond with the balance of principal and interest due to Newman under the new arrangement.

This is in substance the transaction, which the majority of the court hold to be usurious, or in violation of the first section of the statute regulating the rate of interest, and prohibiting a creditor from receiving more than eight per cent. per annum, for giving day of payment to his debtor. It is admitted that if Newman were a *bonâ fide* purchaser of the notes, or in other words, if he took them at the rate of interest, namely, ten per cent. above named in payment of his debt, and not on a contract to forbear or give day of payment of his debt to his debtor, that then the statute was not violated. I fully concur with the majority of the court in this view of the law; but I differ with them as to the construction of the contract to which the law must be applied. The general rule is, that when a debtor indorses the note of a third person to his creditor, corresponding in amount with the debt, or if the note be credited so as thus to correspond, and the original evidence of debt is taken

up, that such indorsed note is intended by the parties to operate as a payment of the previous debt. The presumption of law being that payment was intended, it devolves upon the person controverting the fact, to rebut this presumption by clear and unequivocal testimony. The trifling circumstance that Newman proposed to grant indulgence to Williams if he would pay him ten per cent. weighs nothing against the conduct of the parties when considered "as a whole." Before the arrangement was made Williams was liable as a principal debtor. This liability was cancelled, and he assumed afterwards only the liability of an indorser, which may have been merely nominal; and the indorsement made for the purpose only of transferring his title to the note.

But this point is settled by authority. The supreme court of the United States quote with approbation the doctrine as recognized in New York and other States, that whenever a bill or note in its inception is a real transaction, so that the payee or promisee may, at maturity, maintain a suit upon it, a transfer by indorsement on a discount, though beyond the legal rate of interest, shall be regarded as a sale of the note or bill, and a valid and legal transaction. *Nichols* v. *Fearson et al.* 7 Peters, 103. The presumption, then, in the case at bar, is that a sale of the notes by Williams was intended, and that Newman purchased them in payment of his debt. There is but one inquiry to be made on this subject, and that is, whether the testimony destroys the force of this legal presumption; so far from this being the case, the facts that the original indebtedness was cancelled, that the liability of Williams was changed from that of principal to that of indorser, which is only a conditional and secondary liability under our law, and that the notes which were transferred were credited so as to make them correspond with the amount of Newman's debt, are of themselves sufficient to create a presumption of payment, and sale of the notes for that purpose, even if the rule of law were different from what it is.

But while I am thoroughly satisfied that this is the proper construction to be given to the contract, I am nevertheless indifferent on this point, and think it quite unimportant which con-

Newman *v.* Williams et el.

struction ultimately prevails, as the result under either view ought to be the same. The complainant may safely admit that the transaction between Williams and Newman was intended and consummated as a contract for forbearance or giving day of payment on the debt of the former, due to the latter, and that the statute was violated in the rate of interest stipulated for by the parties. This would not affect the liability of the makers of the notes, who alone are sought to be made liable, and who by the terms of their contract, undertook to pay the money to Williams, or to whomsoever might by his indorsement acquire his title to the notes. The notes being fair and legal in their inception as between the original parties, the only question, and indeed the one upon which the case must after all be decided is, whether the payee's indorsement of the notes operated to transfer his entire title to Newman; or only a title to the amount of $4,500, leaving the title as to the balance of the notes for seven thousand dollars, namely, for the sum of $2,500 still remaining in the payee, notwithstanding his indorsement and delivery of the notes to Newman. Now, as has already been stated, three notes, amounting in the aggregate to seven thousand dollars, were by regular indorsement, so far at least as legal form is concerned, transferred by Williams to Newman. The majority of the court say that this transfer was only good to vest in Newman a title to the amount of $4,500, in the notes for seven thousand dollars, and that the transfer for all beyond this sum was void, leaving, of course, the title as to the balance of $2,500, still standing in Williams. It is true, the majority do not say this in so many words; but that it is what they mean is manifest both from the language of their opinion and from the decree which they have directed to be entered. They say that Newman's administrator shall recover only the sum of $4,500, the amount of his debt, as due in 1843, and that Williams, though before the court merely upon his answer to the bill as a defendant, shall recover all the balance of the seven thousand dollars debt. Now let us analyze the principles upon which this decree must rest. Whatever rights the complainant has, or can assert, must arise out of Williams's indorsement of the note sought to be enforced against the makers, who in vir-

tue of this indorsement are made the debtors of the complainant, instead of continuing the debtors of Williams. The majority say that the legal effect of the indorsement, under the facts of the case, is only to make the makers of the notes such debtors to the amount of $4,500; and that this being the extent of the complainant's title acquired under the indorsement, it shall be the amount of his recovery. What more do the majority say, I do not of course mean in language, but in acts? That notwithstanding the indorsement and delivery of the notes to Newman, the title nevertheless to the amount of $2,500, still remained in the indorser; and that the makers of the notes, still continuing his debtors to this extent, shall pay the money directly to him, their codefendant in the bill, and not to the complainant. The case is now brought to a point where either my brethren or myself must soon be shown to be radically wrong; and that I may present them fairly, I will quote the language of their opinion. It is as follows: " As no interest can be recovered by the complainant, the transfer to that extent being void, it must either belong to Lewis Williams, or the makers of the note be released of all interest, which they do not claim, but allege that it belongs to Lewis Williams." Now I submit, if the transfer was void as to the interest, which is said to be $2,300, or whether the majority do not mean thereby to say, that the title of Lewis Williams as payee of the notes to the amount of $2,300 remained with him, notwithstanding his indorsement and delivery of the notes to Newman. The question then resolves itself into this: Newman, under the indorsement, acquired a legal title to the amount of $4,500, as indorsee of Williams; and that the legal title as to the balance of $2,500, continued to abide in Williams as payee of the notes. But let us continue the examination. Newman is the holder of notes for seven thousand dollars, in which he has a legal title to $4,500. As an incident to a legal title is the right to sue the party in default; or, in other words, a legal remedy for the enforcement of the legal right; and he accordingly commences his suit in a court of law, to compel the makers to pay their debt. Williams holds the legal title to the balance of the notes, being $2,500; the same incidents attach to his title which

attach to Newman's; and Williams accordingly commences another suit in the same court, upon the same notes, against the makers to recover the amount of his claim. Newman in his declaration avers that in virtue of Williams's indorsement, in general terms, and delivery of the notes to him, Newman, he acquired Williams's title thereto to the amount of $4,500. Williams, more full in his averments, declares that he was the payee of the notes; that he indorsed and delivered them to Newman upon a consideration moving the parties thereto, amounting to $6,800. But that the said consideration to the amount of $2,300, by virtue of a certain corrupt agreement between the parties, contrary to the form of the statute in such case made and provided, was void; wherefore his title as payee to this amount still continued to remain and abide with him, the said Williams, notwithstanding his indorsement and delivery of the said notes to Newman. If this is not to be the practical working of the rule established by my brethren, I must confess my inability to understand either their position, or the points involved in this case. For wherever you locate the legal title, whether to property, or to a contract, or to evidences of debt, you must locate the incidents of such title, among which is the remedy to protect the right or to enforce performance of the contract. If Newman and Williams have a legal title for separate and distinct amounts of the common debt, secured by the three notes, a right of action to each upon the notes against the makers, must follow as a necessary consequence. But I need not debate this point; the majority of the court have acted upon the principle themselves in giving Williams a decree for the $2,300, being the amount of the notes, which they say did not pass to Newman under the indorsement, " the transfer to that extent being void."

Again, it must be admitted that if the indorsement was inoperative to pass the title to the $2,300 to Newman, the title must have remained in Williams to that extent; and further, if it be said that the title to the whole of the notes for seven thousand dollars passed under the general indorsement to Newman, as I contend it did, and that the title for no part, after the indorsement, remained in Williams, then I ask upon what principle is it that he, Williams, obtains a decree for any thing; for such a

thing as a recovery of either property or money, without a title in the party claiming the benefit of the contract, or what the court supposed to be a title, was never heard of in a court of justice. The majority, then, are forced to take one of two positions, that Williams either obtained his decree upon the title, which they must say remained in him after his indorsement of the notes, or that he obtained it without any title at all to the money. Because if the title to the $2,300 did not continue to remain with him, it must have passed to his indorsee, Newman; and if it vested in him, he is entitled, or rather his administrator, to the incident of the title, namely, to receive the money in addition to the $4,500. For it will not do to say that Williams can recover without a title; nor will it do to say that he has any other title than such as could have remained in him as payee, after his indorsement and delivery of the notes to Newman. No other pretence of title is shown.

I now put the question whether Williams, who was the payee of three notes for one thousand dollars, could indorse them so as to vest the legal title in the indorsee to the amount of $4,500, and retain the legal title as to the other $2,500 in himself? If such a contract could be made, then I am willing to admit that I may be wrong upon every point arising for consideration in this cause. It is only necessary, however, to refer to authority to settle this point. The authorities will all be found collected and reviewed by the supreme court of the State of New York, in the case of *Douglass* v. *Wilkason*, 6 Wend. 639–648, and they will all be found to be harmonious, beginning with the case of *Hawkins* v. *Cardy*, in 1698, followed up by every subsequent case to the present time. "The assignment of part of a demand due on a promissory note, does not enable the assignee to maintain an action against the maker." "Nor can an indorsement be made for the transfer of less than the full sum appearing to be due upon the bill or note." Bayley on Bills, 72. A bill cannot be indorsed for part only of its contents, unless the residue has been extinguished. 3 Kent, 59. The court say in the case in 6 Wend., that "the language of all the books is, that the indorsement transfers the property of the bill or note to the indorsee. What does less than that,

is not in strictness an indorsement." The result then is, that the title as to part of the notes could not, after the indorsement, remain with the payee, and as to the other part vest in the indorsee. The indorsement either transferred the entire title of Williams, or it transferred nothing to Newman.

The effect of every general and unrestricted indorsement is, to invest the indorsee with the payee's title to the note, and to enable such indorsee to maintain an action on the note against the maker, and to recover to the same extent that the payee could if no indorsement had been made, and he were the party suing.

The rule is only different when the indorsement is wholly void. The maker can, then, resist a recovery, not that he does not owe the money to some one, but the indorsement being absolutely void, the indorsee acquired no title to the note, and consequently no right to receive the money or to prosecute the suit. But in every case where the indorsee acquires the payee's title, he at the same time acquires all the incidents of such title, and can, under all circumstances, recover at least what the payee could recover, and in many cases much more. The case of _Adams_ v. _Runnells et al._, 8 S. & M. 624, and _Gaither_ v. _The Farmers, &c. Bank, &c._, 1 Peters, 37, only establishes what I admit, that where a party has to trace his title through an indorsement which is void, he cannot recover against the maker of the note, for the very reason heretofore stated, that such a thing as a recovery without title was never heard of in a court of justice; and a void indorsement can confer no title. The other authorities cited by the majority of the court, in the main sustain my view of the law, and do not therefore require special notice. I will, however, cite two authorities of my own selection, to prove that a note which is fair in its inception may be indorsed at an usurious rate of interest, and that the indorsee can recover the full amount from the maker.

The supreme court of North Carolina said: "If the contract be good in its origin, the subsequent transfer of it, usuriously, does not affect it against the maker," who is bound to pay to the holder according to his contract with the payee. No recov-

ery can be had on the indorsement against the indorser.   *Collier* v. *Nevill*, 3 Dev. 32..

Again, the court of appeals of Kentucky said, that " However unfair and usurious the contract between the assignor and assignee may have been, the obligor could not have been injured by it ; payment to the holder of the writing, under a regular assignment to him, would have been a complete discharge of the obligation ; and the person injured by the usurious contract would have been left to his remedy against the person who practised the usury."   *Littell* v. *Hord,* Hardin's R. 82.

Both upon principle and authority it is to my mind clear that the complainant is entitled to a decree for the full amount of his note, and to all the interest accruing since the maturity of the note to the present time.

The majority of the court, however, not only give to Williams the $2,300, which they say was the interest agreed to be paid at ten per cent. per annum, for the forbearance from 1843 to 1848, but they go further and give him all the interest which has accrued from the 1st of January, 1848, on the note for five thousand dollars, up to the present time, and interest, too, which has not accrued in virtue of any contract between the parties to pay illegal interest, for the illegal contract, if illegal it be, was at an end on the 1st of January, 1848, the day on which the note for five thousand dollars fell due.   Newman only agreed to extend the time of payment of his debt till January, 1848, if that is the construction which must prevail. On that day he looked not to Lewis Williams, the party to the illegal contract, for payment, at least not as the party pecuniarily liable, but to the maker of the note, the title to which Newman held as indorsee of Lewis Williams.   The majority of the court, however, say, that instead of the makers of the note being indebted to Newman on the 1st of January, 1848, in the sum of $4,800, the balance due on the note, they were only indebted to him in the sum of $2,500, and that they owed the balance of the $4,800, namely, $2,300 to Lewis Williams.

Take the majority of the court upon their own ground, and how is it possible to sustain their decree ?   They, in the first place, decide that Stephen and Mary Williams were indebted

to some one on the 1st of January, 1848, in the sum of $4,800. That though this debt has been honestly due for more than seven years, the debtors have failed to pay it, and that as the legal consequence of their failure to perform their honest contract, they must pay interest at the rate of eight per cent. per annum from January, 1848, to the present time, the debt having been contracted prior to 1842. The majority next proceed to decide, that of the sum of $4,800 thus due from the makers of the note, and drawing interest as above, the sum of $2,300 was due to Lewis Williams on the 1st of January, 1848, and that the balance, namely, the sum of $2,500, was due on that day to Newman. One would naturally suppose, under this simple statement of the case, that Lewis Williams would recover his principal and interest on it, and no more, and that Newman would do the same. But the majority say no, — that Williams must recover his principal of $2,300, interest on it up to this time; and what more? also the interest which has accrued, and which will accrue, I suppose, of course, on Newman's $2,500. The question resolves itself into this: Newman has been unjustly and fraudulently, as I will hereafter show, kept out of his money for more than seven years, during all which time it has been drawing interest, and the majority of the court say to the unscrupulous debtors, as the legal penalty inflicted by the law, in consequence of your faithless omission to perform your contract with Newman, and in consequence of the injury you have inflicted upon him by your inexcusable delay, you shall pay interest on the amount of his debt, not to Newman, however, the party who has been defrauded, but to Lewis Williams, who has both directly and indirectly aided in committing the fraud; and as this involves a question of fact, though not in regular order, I will dispose of it. It is a fact admitted in the record, that this same party who recovers all the interest, after his indorsement of the notes to Newman, went into the clerk's office where the mortgage, executed by the makers of the notes, was recorded, and entered it " as satisfied " on the record. The indorsement of the notes of course operated as an equitable assignment of the mortgage to Newman; and one of the objects of the bill is to set aside this fraudulent

entry of satisfaction, to establish the mortgage, and have it foreclosed against the mortgagors.· The fact further appears, that while this entry of " satisfaction " stood in full force on the record, the property was, to a considerable amount, sold to innocent parties who can only be protected, if the entry of satisfaction would not do so, on the ground that they have not yet paid the purchase-money, and can, upon being informed of the facts, apply it to the mortgage debt.

I submit that this conduct establishes two important facts. First, that Lewis Williams was acting in collusion with the debtors, and inducing them not to pay their debt to Newman when it became due, or at any other time, if he could be defrauded out of his security.   And secondly, such would be the natural effect of his acts upon the minds of the debtors, unless they were liberally endowed with those faculties which do not stand out very prominently in this transaction — a sense of justice and of right in performing their contracts.   It may be mentioned as a further fact, that the very answers of the several defendants tend strongly to prove a combination between and among them to defraud Newman's estate.

But the majority of the court rest their decision on the fact that the debtors are but performing their contract, by paying interest; and the question is, therefore, whether Williams or Newman shall receive it.   This question is easily answered. We will suppose that Newman extorted from Williams $2,300 illegally, and that what was thus illegally extorted shall be paid back.   What shall be the measure of damages in such case ? Certainly not more than the principal and legal interest ?   I put this case : Suppose the debtors were to come forward voluntarily to settle with Williams, no bill having been filed or suit commenced, could they pay him more than his principal and legal interest on the principal ?   Certainly not.   The title to the note only remained in him to the amount of $2,300, if any title at all remained, and. it is upon this title that he receives the money, — the debt as the principal, and interest as the incident.   The majority have lost sight of the fact, that though Williams is a defendant in the suit, that yet when he recovers or obtains a decree in his favor for the payment of money to

him by the complainant, or by a codefendant, that he, for the purposes of such decree, must assume the attitude of a complainant, and can obtain no more than he' could if he were in fact the original complainant in the cause, and the complainant and other parties were the defendants. Now let us suppose Mr. Williams before the court as a complainant in an original bill, the makers of the notes and Newman being made defendants. Williams states that he was the payee of the notes; that he indorsed them to Newman upon a consideration of $4,800, $2,300 of which was to secure the payment of usurious interest; that Newman, in virtue of the indorsement, still holds the notes, and will sue at law on his title and collect the full amount from the makers, together with legal interest, as a consequence of their failure to pay the debt. Let us suppose further that he brings into court the $4,500 due in 1843 to Newman, and tenders it to him, and thereupon prays the court to cause Newman to deliver up the notes to him, Williams, so that he may collect the full amount and legal interest thereon since due from the makers. I have supposed a better case for Williams than the record makes for him, and I now ask if there is a court of equity in Christendom that would give him relief upon the case supposed? I answer unequivocally in the negative. He would be told, that by his indorsement he parted with his title to the notes, and that the legal title, by virtue thereof, vested in Newman; that a court of equity would only disturb this title for the purposes of justice; that he, Williams, was bound, as an honest man, to pay to Newman his principal and legal interest since the debt had become due; that this was an obligation, whether binding in law or not, on account of the illegal conduct of both of the parties, was nevertheless binding upon his conscience, and that a party who had acquired a legal right or a legal advantage should only be required to surrender it, when in conscience he could not retain it or hold that which might result from using it; that asking equity he must do equity; that there is but one thing which a court of equity places above a legal title, and that is, justice as understood and appreciated by an enlightened conscience; and finally, that if

he is unwilling to submit his case to these tests, he has sought relief in the wrong forum.

But the majority of the court say that the contract is executory, and as Williams is defendant, he can therefore recover the interest. I deny the truth of the very first proposition, that the contract as to Lewis Williams is executory. Did he not indorse and deliver the notes to Newman; and was not this contract, so far as Newman's title to the notes is concerned, as completely executed the moment the indorsement was complete, as it ever can be? The majority would be right if Williams were sought to be held liable on his indorsement. He then could say the contract in that respect was executory; and not having paid the illegal interest, the law excused him from performing this part of his contract as indorser. But there is no effort to make him liable on his indorsement. He is a party to the bill, merely because he holds the naked legal title to the mortgaged property, and because he made the fraudulent entry of " satisfaction " of the mortgage on the record. The makers of the note are the only persons pursued for the debt; and there is but one question to be considered in this connection, and that is, whether the complainant, who has the legal title to the whole note, shall be permitted to collect the whole of the money, principal and interest, due from the makers, and retain it; or whether Lewis Williams, who has no legal title to the note or any part of it, shall be permitted to set up what is supposed to be an equitable title to part of the money which is sought to be collected from the makers, and whether they shall pay such part directly to him, instead of to the complainant who has the legal title. We will again remark, that whatever decree is made in favor of Williams, must be regulated by the same rules which would govern the court, if Williams were the complainant in the cause. Having been made a defendant in this cause, we will suppose his case regularly presented by a cross-bill against his codefendant and the complainant, what relief could he obtain upon his cross-bill? This question may be answered in few words, and it is, that he could recover only as much as he could recover in a suit directly against the com-

plainant if he had received the money from the makers of the note, and this upon the principle of preventing circuity of action or multiplicity of suits. The court would say, as Williams could recover so much money from the complainant, if he were to collect it from the debtors, that they, the debtors, should be decreed to pay that amount directly to Williams instead of to the complainant, thus making one suit terminate the controversy. Now, supposing the money to have been paid to the complainant, how much of it could Williams recover back? Only the excess of legal interest, or the difference between eight and ten per cent. The complainant's title gives him the legal right to collect from the makers of the note every dollar of the money due by them. As already remarked, a court of equity will only restrain the complainant in the use of his legal title, to accomplish the ends of justice between the parties, and will only decree to Williams before collection, by virtue of the legal title, what the complainant would be compelled to pay to Williams after collection. This is the extent of the relief which he could get on his cross-bill, if his case were in this manner before the court. But the case stands merely upon the defendant's answer to the bill. "A defendant can pray nothing in his answer, except to be dismissed by the court. If he has any relief to pray, he must do so by bill of his own, which is called a cross-bill." 3 Daniell, Ch. Pr. 1742. This authority shows that the case stands upon a state of pleadings upon which no relief can be granted, even if it had merits; and I think it has been clearly shown that it is perfectly destitute in this respect. It may be said, in few words, to be a case without pleadings upon which a decree could be made for the defendant, and without any merits to justify a decree, even if the pleadings were proper.

I will merely remark, in conclusion of this opinion, that under the most unfavorable view of the law for the complainant, I think he ought to recover the interest accrued on his debt since 1848. It is admitted that the sum of $2,500 was then honestly due him, and that he had a legal title to the note to that amount. The language of the statute is, that no interest or premium shall be recovered for " forbearance or giving day of

payment." The forbearance was at an end on the 1st of January, 1848. Interest afterwards resulted not from the illegal contract, but as the consequence of the failure to perform the legal one.

But the case presents this novel attitude : Williams's principal, under the decision of the majority, was, on the 1st of January, 1848, $2,300 ; he recovers this sum under the decree, interest on it, and interest on Newman's principal, which is $2,500. By this operation Williams has been getting a fraction over sixteen per cent. per annum interest on his principal since January, 1848, to present time, to secure which he has got his own entry of satisfaction of the mortgage set aside, it reëstab-lished, and a decree merely upon his answer to foreclose the mortgage for the payment of his debt. As the investment is a good one, and the debt well secured, he will no doubt become thoroughly persuaded that debtors ought to be pursued with great leniency, and that the complainant ought to be held to a strict observance of all the forms of law, especially so long as Williams can get the interest which the complainant's debt is drawing.

My opinion is, that the complainant ought to recover the full amount of the note in controversy, and legal interest thereon since due.