Frank Lee GARRETT, Plaintiff,

v.

James S. GILMORE, III,
et als., Defendants.

Civil Action No. 95–1230–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

May 1, 1996.

Frank Lee Garrett, Dillwyn, VA, Pro Se.

Jill Theresa Bowers, Office of the Attorney General, Richmond, VA, for Attorney General, James Gilmore, Daniel T. Mahon.

## *MEMORANDUM OPINION*

TURK, District Judge.

FRANK LEE GARRETT, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that defendants, officials of the Virginia Department of Corrections (VDOC), violated his constitutional rights by depriving him of his legal materials and, thus, preventing him from filing cases and pursuing cases already underway. As relief, he seeks interlocutory injunctive relief or an injunction directing that his materials be returned to him.

The court directed defendants to show cause why interlocutory injunctive relief should not issue. Defendants filed a timely response to the show cause order, along with a motion for summary judgment and a motion for sanctions. The court notified the plaintiff of the defendants' motion as required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975) and warned plaintiff that judgment might be granted for the defendants if plaintiff did not respond to the motion by filing affidavits or other documents contradicting or otherwise explaining his claims. Plaintiff has not responded; however, the time allotted by the court for his response has long since expired, making this action ripe for the court's consideration. After review of the record, it is the opinion of the court that defendants are entitled to summary judgment as a matter of law. However, the court does not find sufficient grounds upon which to sanction plaintiff at this time.

■ Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Instead, the non-moving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R.Civ.P. 56(e). If the non-moving party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the non-moving party.

### I. Allegations and Evidence

Garrett alleges the following sequence of events. On October 11, 1995, Attorney General James Gilmore ordered the warden of Dillwyn Correctional Center to take away Garrett's legal materials except those which would fit in a box measuring 20 × 12 × 13 inches. Garrett was told that he had disobeyed a direct order [1] and was going into segregated confinement. In packing his legal materials, officials mixed up the paperwork for different cases which delayed him in filing new cases and in pursuing pending cases. His own law books were also taken from him and he was told that they would not be returned to him. Garrett also alleges that defendants withheld his legal mail so he could not file a petition for rehearing or for rehearing en banc on an unidentified case which had been dismissed. He was able to file a motion for extension of time, but the petition was dismissed.

Defendants have submitted evidence supporting a more detailed version of events which Garrett has not disputed. Garrett is

---

1. This charge was later dismissed and expunged from Garrett's record.

housed in a dormitory especially designed and maintained to meet the needs of physically impaired inmates. Each inmate is assigned a single bed, a standing locker attached to the bed, and one foot locker. In managing this housing unit, officials have a heightened need to implement and enforce policies which protect the safety and security of the inmates, such as ensuring that walkways are clean and orderly, easily accessible for wheelchairs and medical equipment and in full compliance with fire safety codes. For fire and safety reasons, inmates in this dormitory may maintain only an amount of personal property which will fit within their individually assigned footlockers.

If an inmate has personal property which will not fit in his lockers, that excess property is maintained in the property control area. When an inmate wishes to access his excess property, he must complete a request form, specifying the items which he desires to retrieve from property control and the property items from his lockers which he will put in property control in exchange for the retrieved items. This procedure is clearly set forth in Departmental Operating Procedure (DOP) 856. Furthermore, defendants present documentation that Garrett is well aware of the property exchange procedure and has utilized it. Excess property is not maintained in property control indefinitely. Another procedure requires inmates to advise officials of how they wish to dispose of the excess, to have it sent to relatives, etc. If the inmate fails to advise officials of what he wishes to do with the excess, the inmate personal property panel decides what to do with it.

On September 28, 1995, security officials noticed that Garrett had somehow obtained an extra footlocker. Officials told him to sort through his property and take anything that would not fit in his two assigned lockers to property control. Garrett became belligerent, refused to cooperate, and was charged with disobeying a direct order. He was taken to prehearing detention where he was held from that day until October 2. As when any inmate is taken to segregated confinement, an officer packed and inventoried Garrett's property on September 28. During the time Garrett was in detention, he had the property privileges of any inmate in segregated confinement. Specifically, he was allowed to keep only that amount of paperwork in his cell which would fit into a box measuring $12 \times 12 \times 20$ inches. He was still able to swap property items from the box with other items in property control. Garrett was allowed to sort through his property in property control to determine what legal materials he needed.

On October 2, Garrett returned to his normal housing unit. A majority of his property was returned to him at that time. However, his excess property (which would not fit in his assigned lockers) was retained in property control. Officers told him that if he wanted to go to property control to sort through his property there, all he needed to do was to file a request to that effect. As stated, Garrett did utilize this procedure.

The hearing on Garrett's disciplinary charge was conducted on October 11, 1995. He was convicted and sentenced to ten days in isolation with credit for time served on prehearing detention. An officer packed and inventoried the property from Garrett's lockers, and Garrett approved and signed them. Garrett was allowed to keep the usual box full of paperwork and to exchange items from the box for items in property control upon request. On October 15, Garrett was returned to his normal housing unit and his property was returned to him.

## II. Opinion of the Court

As a preliminary matter, the court notes that plaintiff's claim concerning withholding of his legal mail must be dismissed as moot. Plaintiff seeks only injunctive relief in this action. He does not explain any form of injunctive relief possible on his mail claim, as he alleges the petition for which he sought rehearing has already been dismissed. As plaintiff does not allege any other imminent injury which could be prevented through a court directive, he has failed to state an active claim for injunctive relief as to his legal mail. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (to show actual controversy, plaintiff must show

actual or threatened injury resulting from defendant's conduct which is redressable through a favorable decision against defendant); *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (actual controversy must exist at all stages of case, not merely at time complaint is filed).

■ In his claim concerning confiscation of his legal materials, Garrett asserts that defendants' actions deprived him of access to the courts. Inmates retain a constitutional right to reasonable access to both state and federal courts. *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). However, the court cannot find that this right entitles an inmate to keep an unlimited amount of legal materials in his personal area in the prison. Where an inmate asserts that a prison regulation infringes upon a constitutional right, the court must balance the rights of the inmate against the fact that prison authorities are best equipped to make difficult decisions about prison administration. *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). The United States Supreme Court has set forth four factors to aid courts in determining whether a regulation impermissibly infringes upon constitutional rights. *See Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987). The regulation must be upheld where (1) a valid, rational connection exists between the regulation and a legitimate penological interest; (2) alternative avenues remain available for exercise of the constitutional right; (3) accommodation of the inmate's asserted right would have a significant ripple effect upon fellow inmates or prison staff; and (4) an absence of ready alternatives to the regulation suggests that the regulation is not an exaggerated response to the prison's concern. *Id.*

■ Under this standard, the court must uphold Dillwyn's limitation on property in inmates' personal areas and in segregation. The prison has a legitimate penological interest in fire safety and in accessibility for disabled inmates and medical equipment and a reasonable limitation on personal property is rationally related to furthering that interest. If inmates were allowed to accumulate mounds of extra property and paperwork around their personal areas, the resulting mess could quickly become a fire hazard and hinder inmates and medical personnel in navigating the corridors. The property control procedure for swapping property items as needed offers Garrett access to whatever legal materials he cannot fit into his assigned lockers, allowing him to exercise his right to access the courts. To allow Garrett to retain an extra locker full of personal property could easily engender jealousy among other inmates and a demand that they all receive the same privilege. Garrett has not suggested any other ready alternative to the prison's standard property limitation, and the court does not find any indication that the regulation is an exaggerated response to the problems an unregulated clutter of inmate property could create. The property limitation must be upheld as constitutional under *Harper* and *Turner, supra*.[2]

■ Garrett complains that the officers packing his property mixed up his paperwork to the point that prosecution of his cases was delayed. However, he does not dispute defendants' evidence that he could have prevented his trips to segregation in the first place, had he packed away his excess property to the property control area when he was ordered to do so. He must take some responsibility for his own actions. In addition, although he vaguely mentions that some cases yet to be filed were delayed by the mixup, he does not offer any substantive evidence of specific cases which could not be filed or which were "injured" because of the mixup or because of any delay in retrieving items from property control. Accordingly, Garrett's allegations fail to state any claim that he has been denied access to the courts through the mixing of his papers or the storage of his legal materials in property control. *See Strickler v. Waters*, 989 F.2d

2. Garrett alleges that Attorney General James Gilmore personally ordered Dillwyn officials to take away Garrett's property. Aside from the fact that Garrett does not allege a single fact in support of this assertion, the court cannot find that such an order from Gilmore would violate constitutional rights where it merely requests implementation of an existing and constitutional prison policy.

1375 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) (to make out prima facie case of denial of access to courts, plaintiff must show actual injury to litigation efforts resulting from defendants' actions).

■ Finally, Garrett expresses his fear that his materials in property control will be destroyed. While it appears there may be some chance of this occurrence eventually, Garrett does not allege that the property control panel has yet made any decision about his property. In addition, Garrett himself can somewhat control what happens to his property by advising property control of how he wants to dispose of the property.

Based on the foregoing, it is the opinion of the court that plaintiff has failed to present any genuine issue of material fact remaining as to his access to courts claim. Accordingly, defendants are entitled to summary judgment as a matter of law. *Anderson, supra.* As Garrett has failed to demonstrate the validity of his underlying constitutional claim, he is not entitled to injunctive relief of any sort, and his motion for interlocutory injunctive relief must also be denied. *Wetzel v. Edwards,* 635 F.2d 283 (4th Cir.1980), citing *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing, Co.,* 550 F.2d 189, 195 (4th Cir.1977).

Defendants have moved for sanctions, asserting that plaintiff has made purposeful misrepresentations to the court. Except perhaps for his rather bizarre accusation against the Commonwealth's Attorney General (who likely never heard of plaintiff), the court does not find any purposeful misrepresentation. It is undisputed that Garrett's property was packed up and taken away from his personal area and that not all of it was returned. The court cannot find that plaintiff's failure to mention the property control procedures, in itself, is a misrepresentation worthy of sanctions. Defendants' motion for sanctions shall be denied.