**NTP, INC., Plaintiff.**

v.

**RESEARCH IN MOTION, LTD., Defendant.**

**No. 01–CV–767.**

United States District Court, E.D. Virginia, Richmond Division.

Nov. 4, 2002.

See also 2003 WL 21212657.

Stephen Earl Baril, Williams Mullen PC, Richmond, VA, Thomas Robert Goots, Robert Conley Kahrl, Robert Louis Canala, Kenneth Robert Adamo, Jones Day, Cleveland, OH, Donald Belton Ayer, Charles Richard Allan Morse, Jones Day, David Wayne Long, Howrey Simon Arnold & White LLP, Washington, DC, Henry C. Bunsow, Howrey Simon Arnold & White, San Francisco, CA, for Defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on Plaintiff NTP Inc.'s ("NTP") Motion for Partial Summary Judgment filed on August 30, 2002. NTP moves this Court to grant Partial Summary Judgment on its behalf on the grounds that there is no genuine issue of material fact with respect to the nature and operation of accused BlackBerry products that infringe upon four claims in the patents-in-suit. Defendant Research in Motion, Ltd. ("RIM") has filed a Cross–Motion for Summary Judgment on the grounds that each of the four claims asserted in NTP's Motion for Partial Summary Judgment depend upon components that do not exist in the accused devices. Pursuant to the Order of the Court, issued on October 23, 2002, for the reasons discussed herein, Plaintiff's Motion for Partial Summary Judgment is GRANTED, and Defendant's Cross–Motion for Partial Summary Judgment is DENIED.

### I.

This is a patent infringement case in which Plaintiff NTP, Inc. ("NTP") alleges that certain technology manufactured by Defendant Research In Motion, Limited ("RIM") directly and indirectly infringes upon thirty-one (31) claims in the following

Jack Edward McClard, Maya Miriam Eckstein, Hunton & Williams, Richmond, VA, John Benedict Wyss, Floyd Brantley Chapman, Scott Eric Bain, James Harold Wallace, Jr., Wiley Rein & Fielding LLP, Washington, DC, Christopher Michael Mills, Wiley Rein & Fielding LLP, McLean, VA, for Plaintiff.

seven patents: U.S. Patent Nos. 5,436,960 (the '960 Patent), 5,438,611 (the '611 Patent), 5,625,670 (the '670 Patent), 5,631,946 (the '946 Patent), 5,819,172 (the '172 Patent), 6,067,451 (the '451 Patent), and 6,317,592 (the '592 Patent) (collectively, the "patents-in-suit" or the "Campana patents"). The Campana patents sought to integrate electronic mail with wireless transmission. Prior to the Campana patents, the transfer of electronic mail was landline based. The Campana patents sought to increase the ability for individuals to gain access to their incoming and pending electronic mail messages (referred to throughout as "email"), without requiring them to access a telephone line. In short, the aim of the Campana patents was to allow greater mobility to individuals without sacrificing the accessibility of receiving their email messages.

The Campana patents sought to encourage greater mobility by allowing individuals to send and receive electronic mail via wireless systems. Prior to the Campana patents, individuals were only able to transfer alphanumeric text to devices such as pagers, which contained rudimentary display or printing capabilities and lacked any ability to process the received data with an application program. The Campana patents provided connectivity for email between wired and wireless systems.

RIM is an Ontario, Canada corporation with its principal office located in Waterloo, Ontario, Canada. NTP has filed this patent infringement action, asserting that RIM manufactures products and operates a system that infringes on thirty-one claims of the Campana patents (the "Accused Devices"). The accused devices in this case are the BlackBerry Pager, the BlackBerry Enterprise Server ("BES"), and the BlackBerry "wireless email solution." RIM manufactures three versions of Redirector Software that forwards a copy of e-mail received to the BlackBerry Relay, which directs e-mail to a Radio Frequency Transmission Network ("RF Network"). The BlackBerry Pager receives the copies of the forwarded email sent by a RF Network.

## II.

■ A finding of patent infringement involves a two-step analysis. *Standard Oil Co. v. Cyanamid Co.*, 774 F.2d 448, 452 (Fed.Cir.1985). First, the court must interpret the asserted patent claim. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995). Second, the trier of fact must compare the properly construed claim to the allegedly infringing product. *Id.* A claim covers the accused device if it literally embodies every limitation of the claim. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed.Cir.2002); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993); *Minnesota Min. and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1570 (Fed. Cir.1992) ("[E]vidence before the court must be examined to ascertain whether the claim has been infringed, whether the claim 'reads on' the accused product or process."). The construction of a patent claim is a legal matter exclusively for the court. *Markman*, 52 F.3d at 978 ("It has long been and continues to be a fundamental principle of American law that the construction of a written evidence is exclusively with the court.") (quoting *Levy v. Gadsby*, 7 U.S. 180, 186, 3 Cranch 180, 2 L.Ed. 404 (1805)). However, infringement is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998).

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). According to the Fourth Circuit:

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) .... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (emphasis original). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, if a motion for summary judgment is "properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on mere allegations or denials of the pleadings ... [but] must respond by affidavits or otherwise and

present specific facts demonstrating a triable genuine issue of material fact." *Garrett v. Gilmore,* 926 F.Supp. 554, 555 (W.D.Va.1996), *aff'd,* 103 F.3d 117 (4th Cir. 1996).

## III.

NTP has filed this Motion for Partial Summary Judgment on the grounds that RIM manufactures a device or operates a system that infringes four claims of the patents-in-suit. RIM has filed a Cross–Motion for Partial Summary Judgment that these four claims are invalid because all four claims require two common limitations, neither of which are present in any RIM product.

## A.

NTP asserts that RIM has infringed four claims of the patents-in-suit. Specifically, NTP alleges that: (1) the BlackBerry Pager infringes Claim 248 of the '451 Patent and Claim 150 of the '592 Patent; (2) the BlackBerry Enterprise Server infringes Claim 653 of the '592 Patent; and (3) the BlackBerry System infringes Claim 15 of the '960 Patent. (Memorandum in Support of NTP's Motion for Partial Summary Judgment of Infringement ("Mem. in Supp.") at 14.) NTP asks this Court to grant summary judgment in its favor because there is no genuine issue of material fact that RIM literally infringes these claims.

NTP asserts various grounds of infringement of these four claims, all of which are governed by federal statute. 35 U.S.C. § 271. Specifically, NTP asserts that RIM is liable for infringement under § 271(a), (b), (c), and (f). Under subsection (a), a person will be liable for infringement if that person makes, uses, offers to sell, sells, or imports into the United States a patented invention. 35 U.S.C.

§ 271(a); *Joy Tech., Inc. v. Flakt, Inc.,* 6 F.3d 770, 773 (Fed.Cir.1993). Inducement to infringe is defined by subsection (b). To prove inducement, the plaintiff must not only show direct infringement, but it must establish "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304–05 (Fed.Cir.2002) (internal citations omitted). Contributory infringement, under subsection (c), is established where a seller of a component of a patented invention knows that such component is "especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c); *Husky Injection Molding Systems Ltd. v. R & D Tool Engineering Co.,* 291 F.3d 780, 784 (Fed.Cir.2002). As with inducement of infringement, direct infringement must be established as well. *Id.* Finally, under subsection (f), a defendant will be liable for direct infringement for supplying or causing to be supplied either (1) a substantial portion of the components of a patented invention or (2) any component of a patented invention that is especially made or adapted for use in the invention, for combination outside the United States. 35 U.S.C. § 271(f); *Rotec Indus. Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1257 (Fed.Cir.2000).

### 1. Claim 248 of the '451 Patent: The BlackBerry Pager

NTP argues that the BlackBerry Pager meets the identification limitation in the preamble and all four claim limitations of Claim 248. NTP further alleges that there is no genuine issue of material fact that BlackBerry Pagers are imported, offered for sale, and sold by RIM in the United States, resulting in infringement under § 271(a). (Mem. in Supp. at 18.) RIM argues that it does not infringe Claim 248 because it does not provide the limitations in the preamble, and it does not provide an RF device.

#### a. Claim Preamble

NTP asserts that the only limitation in the claim preamble with respect to the RF device, is that the RF device must have an identification. RIM, on the other hand, argues that this preamble has an additional limitation of a communication system, which it does not provide.[1] The preamble of Claim 248 states:

> In a system comprising a communication system which transmits electronic mail containing information, with the electronic mail being inputted to the communication system from a plurality of processors, a RF system and an interface connecting the communication system to the RF system with the information contained in the electronic mail and an identification of a RF device in the RF system being transmitted from the interface to the RF system and broadcast by the RF system to an identified RF device, the identified RF device comprising:

('451 Patent, 51:12–21.)

Generally, the preamble does not limit the claims. *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1346 (Fed.Cir.2002). However, the preamble will limit the invention if it "recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir.2002) (citing *Pitney Bowes, Inc. v.*

---

1. RIM also asserts this argument with regards to Claims 150 and 653 of the '592 Patent. The same analysis used with respect to Claim 248 of the '451 Patent applies to these claims as well.

*Hewlett–Packard, Co.*, 182 F.3d 1298, 1305 (Fed.Cir.1999)). Whether a preamble that states the purpose and context of the invention constitutes a limitation is determined by review of the entire patent and the overall form of the claim to "gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed.Cir.1989); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1572–73 (Fed.Cir.1996). There is no "litmus test" that establishes when a preamble limits claim scope. *Catalina Mktg. Int'l, Inc.*, 289 F.3d at 808. However, the Federal Circuit has offered the following guidance:

> If ... the body of the claim fully and intrinsically sets forth the complete invention, including all of its limitations, and the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states, for example, the purpose or intended use of the invention, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation.

*Pitney Bowes, Inc.*, 182 F.3d at 1305.

A reading of the patent as a whole and the language of Claim 246, which is the independent claim that contains the preamble, reveals that "communication system" is not a limitation of Claims 246–248. The "communication system" is described and claimed earlier in the patent. (*See* '451 Patent, 28:7–26.) The term "communication system" is not contained in the body of Claim 246. *See Catalina Mktg. Int'l, Inc.*, 289 F.3d at 811. Furthermore, it does not give any "life, meaning, or vitality" to the claims. Claims 246–248 describe an "RF device," they do not describe a "communication system." Thus, any language in the preamble that

does not give meaning or life to the term "RF device" is not limiting. As NTP noted, the only language in the preamble that gives such meaning to the RF device is "identification." The other terms in the preamble do not limit the claims. There is no genuine dispute that each BlackBerry Pager has a unique "identification" in the form of a personal identification number ("PIN"). (Mem. in Supp., Ex. 6, 27:12–20.) Therefore, this preamble limitation is met.

Even if this Court were to find that a "communication system" is a limitation of Claims 246–248, RIM's argument on this point is unpersuasive. RIM cites to the affidavit of Allan Lewis for the proposition, that it does not manufacture all the necessary components of a communication system. (RIM's Brief in Response to Plaintiff NTP Inc.'s Motion for Partial Summary Judgment ("Br. in Resp.") at 11; Ex. 4 at ¶ 4.) RIM asserts that it does not provide an "RF System" or a "plurality of processors." (Br. in Resp. at 11.)

However, even if it is true that RIM does not provide all the necessary components for a "communication system," RIM cannot escape infringement simply by claiming it does not provide all of the components, when it substantially engages in infringement activities with the assistance of other entities; it is only necessary that it provide some of the components of a patented invention in the United States, even if such component will be combined outside of the United States, to be liable for infringement. 35 U.S.C. § 271(f); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n. 2 (Fed.Cir.2000).

The other terms of the preamble merely provide the context in which the RF device functions as well. To that end, NTP has termed this preamble language, "contextual limitations." NTP asserts that each "contextual limitation" in the preamble is satisfied. Specifically, NTP notes that it is

undisputed that the BlackBerry Pagers are designed to work with a "BlackBerry-equipped Email System,"[2] which "transmits electronic mail containing information" that is "inputted" to that system by a "plurality of processors." (Mem. in Supp. at 17, Ex. 7; Ex. 13.) Also, NTP asserts that the BlackBerry Pagers are specially designed to work with mobile networks, such as Mobitex and DataTAC, that constitute an RF System, as interpreted by this Court's Markman Order. (*Id.*, Ex. 101–106.) Finally, "there is no dispute that the BlackBerry Relay connects each BB-equipped Email System to the Mobitex and/or DataTAC network and that information contained in the electronic mail and the BlackBerry Handheld's unique PIN are transmitted from the BlackBerry Relay to one of those mobile networks." (*Id.*, Ex. 6, 38:10–22.)

### b. RF device

■ Next, NTP asserts that the language in Claims 246–248, contain four limitations which describe the composition of a RF device: (1) a RF receiver, which receives information; (2) memory coupled to the RF receiver that stores the information received by the RF receiver; (3) a processor, coupled with memory; and (4) at least one application program, executed by the processor, which processes the information. (Mem. in Supp. at 17–18.) NTP refers to evidence in the record which establishes that, according to the Markman Order issued by this Court, each of the four limitations are present in the BlackBerry Pager. NTP asserts that because BlackBerry Pagers are imported, offered for sale, and sold in the United States, that RIM has infringed upon Claim

248 of Patent '451 as a matter of law. (Mem. in Supp. at 18) (citing *3D Sys., Inc. v. Aarotech Lab., Inc.,* 160 F.3d 1373, 1378 (Fed.Cir.1998)).

RIM does not dispute that the BlackBerry pages meet the second and fourth claim limitations. However, RIM argues that it does not provide a RF receiver or a processor because "[t]he Intel 386 processor in RIM's 850 and 950 series BlackBerry Pagers is an integral part of the Pager's radio circuitry, and thus *cannot* be a separate device from an 'RF receiver.'" (Br. in Resp. at 12.) RIM reasons that none of the RF receiver functions can be performed by the BlackBerry Pager without the Intel processor. These functions, as RIM asserts, are performed only by the Intel processor, which is manufactured by Intel, not RIM. Thus, as RIM asserts, the BlackBerry Pager does not meet the definition of a RF device as defined by this Court and required by Claim 248. Essentially, RIM is asserting that because it does not manufacture the processor, a necessary component to the BlackBerry Pager, it cannot be liable for infringement under Claim 248.

RIM's argument is not persuasive. This Court defined a RF device as follows: "A device that requires and/or transmits RF signals and can be carried by a person outside of a home or office." (Markman Order at 9, ¶ 22.) The BlackBerry Pager, manufactured by RIM meets this definition, and it is undisputed that these pagers are sold and supplied in the United States. RIM's argument that Intel manufactures the processor is not dispositive because, again, an entity can be held liable for distributing or importing for sale a compo-

---

**2.** This term, also referred to throughout as a "BB-equipped Email System," was created by NTP in an effort to give a succinct name to an email system that is compatible with the BlackBerry Pager and the BlackBerry Enter-

prise Server. (Mem. in Supp. at 7, ¶¶ C.1–C.14.; Reply Memorandum in Support of NTP's Motion for Partial Summary Judgment of Infringement ("Reply Mem.") at 11–12.) This will be utilized throughout this opinion.

nent of a patented invention. 35 U.S.C. § 271(f); *Rotec,* 215 F.3d at 1252 n. 2.

There is no genuine dispute that the BlackBerry Pager, manufactured by RIM literally embodies every limitation of Claim 248. Furthermore, there is no genuine dispute that such devices are imported, sold, and offered for sale in the United States, resulting in infringement of Claim 248 under § 271(a). In addition, RIM supplies memory and application programs of an RF device, which are components that are especially adapted for use in the BlackBerry Pager. These components are combined with the Intel processor outside the United States when the pagers are manufactured, in such a manner that would infringe Claim 248 if such combination occurred inside the United States, causing infringement under § 271(f). Finally, because BlackBerry Pagers are sold in the United States and customers purchase and use the BlackBerry Pager to practice the Campana invention, RIM is also liable for inducement of infringement and contributory infringement under § 271(b) and (c). Accordingly, summary judgment is warranted with respect to the infringement of Claim 248 of the '451 Patent.

### 2. Claim 150 of the '592 Patent: The BlackBerry Pager

NTP also asserts that there is no genuine issue of material fact that the Black-Berry Pager infringes upon Claim 150 of the '592 Patent because it "constitutes such a wireless device/mobile processor under the Court's claim interpretation." (Mem. in Supp. at 19.) The preamble of Claim 150 is as follows:

> In a communication system comprising a wireless system which communication system transmits electronic mail input-

ted to the communication system from an originating device which executes electronic mail programming to originate the electronic mail, mobile processors which execute electronic mail programming to function as a destination of electronic mail, and a destination processor to which the electronic mail is transmitted from the originating device and after reception of the electronic mail by the destination processor, information contained in the electronic mail and an identification of a wireless device in the wireless system are transmitted by the wireless system to the wireless device and from the wireless device to one of the mobile processors, the wireless device and one mobile processor comprising:

NTP refers to evidence in the record to establish that the BlackBerry Pagers, which are imported, offered for sale, and sold in the United States, meet each of the "contextual limitations" in the preamble. For example, NTP asserts that each BB-equipped Email System is a communication system (Mem. in Supp., Ex. 6, 22:7–24:11); each BlackBerry Pager includes a processor that functions as a destination of e-mail (*Id.,* Ex. 6, 75:15–77:10, 90:8–92:15, 133:4–135:2; Ex. 5, pp. 30, 45, 54); the BES/email server[3] constitutes a destination processor (*Id.,* Ex. 6, 91:21–92:15.); and after reception by the BES/email server, e-mail messages, together with a PIN, are transmitted to the BlackBerry Pager. (Mem. in Supp. at 11–12, ¶¶ 12–16 and cited exhibits.) NTP demonstrates that the BlackBerry Pager meets the claim limitations because it "contains an RF receiver that is connected to the Intel 386 mobile processor, and that, after the RF receiver detects its assigned PIN number in a

---

**3.** This term was also created by NTP to describe the integration between the BES and the Microsoft Exchange Server. (Mem. in Supp. at 8, ¶ 8.) This term will be used throughout this opinion.

broadcast received from the Mobitex or DataTAC network, the Intel 386 processor receives the email information broadcast by that network." (Mem. in Supp. at 20.) In response to these assertions, RIM argues that it is not liable for infringement of Claim 150 because it does not provide a "communication system," it does not provide a wireless device/mobile processor because the BlackBerry Pager is equipped with an Intel 386 processor that RIM does not manufacture, and it does not provide any destination processors, under the claim construction of the Markman Order. RIM's first two arguments can be dispensed with by the discussion of the same arguments regarding Claim 248, *supra*.

 The preamble of Claim 150 contains the term "destination processor." Although, under the analysis discussed, *supra*, it is not necessary that RIM provide a destination processor, even if Claim 150 was limited by a destination processor, RIM would not prevail on its argument. RIM asserts that, according to the Markman Order, the "destination processor" is "*one* single processor, not a combination of two or more processors." (Br. in Resp. at 15.) According to the Markman Order, a "destination processor" is defined as "[a] processor which receives the electronic mail from the originating device, and transmits information contained in the electronic mail and an identification of a wireless device from said destination processor." (Markman Order at 7, ¶ 6.) RIM asserts that it recommends its customers to install the BES on a separate machine from the Microsoft Exchange software, resulting in two separate two processors. (Br. in Resp. at 15; Ex. 7, D.) RIM's argument is not persuasive. This "single processor" requirement cannot be read into this Court's construction of the '592 destination processor. Furthermore, RIM's advertising material describes how there is "tight" and "seamless" integration

between the BES and the Microsoft Exchange Server. (Reply Mem., Ex. 19.) In addition, the BES software Installation Guide demonstrates that Microsoft Exchange Administrator 5.5 must be installed on the BES service machine. (Reply Mem., Ex. 13, RIM 6898.) Therefore, the BES, together with the Microsoft Exchange Server and software, constitutes a '592 destination processor, as defined in the Markman Order. Accordingly, because the BlackBerry Pager literally embodies each and every limitation of Claim 150, there is no genuine dispute that RIM is liable for infringement under § 271(a), (b), (c), and (f). NTP is therefore entitled to summary judgment that RIM infringes Claim 150 of the '592 Patent.

### 3. Claim 653 of the '592 Patent: The BlackBerry Enterprise Server

NTP states that the BES infringes on Claim 653 because RIM's redirector software products, which include the BES, "provide the same type of intelligence to BB-equipped Email Systems" as those claimed under Claim 653. The preamble text of Claim 652, which is incorporated by Claim 653, states as follows:

> A computer program stored on a storage medium for use in a communication system comprising a wireless system which communication system transmits electronic mail inputted to the communication system from an originating device, mobile processors which execute electronic mail programming to function as a destination of electronic mail, and a destination processor in the communication system to which the electronic mail is transmitted from the originating device, said computer program when executed causes said destination processor to perform the steps of:

There is no genuine issue of material fact that the BES is a computer program

that is stored on a storage medium for use in a communication system. (Mem. in Supp., Ex. 7; Ex. 13.) NTP argues that "[a]fter the BES is installed and configured on an existing email system, the BB-equipped Email System transmits inputted electronic mail from various constituent processors running electronic mail programming." (Mem. in Supp. at 21.) This assertion is supported by the record. (*Id.* at 8, ¶¶ 11–13 and cited exhibits.) In addition, it is undisputed that the BlackBerry Pagers execute electronic mail programming and receives electronic mail messages. Finally, the BlackBerry Pager executes email programming and receives messages, while the email is transmitted to the processor on which the BES executes, satisfying each "contextual limitation" of the preamble. (*Id.* at 4, ¶ 3; 6, ¶ 18; 7, ¶¶ 2–5; 8, ¶¶ 8, 11, 14; 11 ¶¶ 14, 15 and cited exhibits.) Again, RIM asserts that it is not liable for infringement of this claim simply because it does not provide a "communication system." This argument can be dispensed with according to the discussion regarding Claim 248, *supra.*

NTP also asserts that the BES performs the three required steps under Claim 653 when it is integrated with the Microsoft Exchange Server ("BES/email server"). Specifically, NTP argues that the BES/email server is a destination processor, as defined according to this Court's Markman Order, and receives email from constituent processors, satisfying the first step of Claim 653. Next, NTP claims that the BES/email server satisfies the second step of Claim 653 because it broadcasts data containing the PIN and information to the BlackBerry Pager's RF receiver; the RF receiver transfers the information to the Intel 386 processor; and the email from the originating device includes both the information within the email and the address of the processor. (Mem. in Supp. at 22.) Finally, NTP argues that the BES

meets the third and fourth limitation of Claim 653 because "[u]pon receipt of email for a Configured User, BES/email server adds the PIN, which is the identification of the Configured User's BlackBerry Pager for both the Mobitex and DataTac networks, to the information such as the sender, subject, recipient, and message body text contained in the electronic mail." (*Id.* at 23.) NTP's arguments here are also supported by the record. (*Id.* at 4, ¶¶ 2,3; 5, ¶¶ 6,7,9; 6, ¶ 8; 7, ¶¶ 2–5; 8, ¶¶ 8, 12–14; 10, ¶¶ 1–5; 11, 12, ¶¶ 12–16 and cited exhibits.)

RIM reasserts that it does not provide a "communication system," because it does not provide all the components that comprise the system. It also reiterates its argument that the BES is not a "destination processor," as required by Claim 653, because it is "peripheral to the Microsoft Exchange email server." (*Id.* at 15.) RIM also argues that the BES cannot be a destination processor because it does not receive email from any "originating processor." (*Id.*) It further argues that, the BES would not constitute a destination processor because the Markman Order requires that a "destination processor is *one* single processor, not a combination of two or more processors." (*Id.*) These arguments, as discussed with respect to Claims 248 and 150 *supra,* are not persuasive.

There is no genuine dispute that the BES literally embodies every limitation of Claim 653. The BES is supplied, sold, and offered for sale in the United States. The BES is combined with other components of a wireless email system both inside and outside the United States in a manner that practices the Campana invention. The BES has no stand-alone function, as it is especially adapted for use in the electronic mail system, and it is not suitable, in and of itself, for substantial noninfringing use. Finally, RIM actively induces the inte-

gration and combination of the BES with other components of the electronic mail system inside the United States and outside the United States in such a manner that would constitute infringement if the combination of such components occurred inside the United States. Accordingly, there is no material dispute that RIM is liable for infringement under § 271(a), (b), (c), and (f). NTP is entitled to summary judgment on the grounds that RIM infringes Claim 653 of the '592 Patent.

### 4. Claim 15 of the '960 Patent: The BlackBerry System

Claim 15 of the '960 Patent claims the electronic mail system at the heart of this patent infringement action. Claim 15 is a dependent claim with a preamble and seven claim limitations. The preamble and all of the claim limitations are literally infringed by RIM. Each limitation is discussed in turn.

### a. Claim Preamble

■ Claim 15 has a short preamble, which was inherited from Claim 1. The preamble states:

A system for transmitting originated information from one of a plurality of originating processors in an electronic mail system to at least one of a plurality of destination processors in the electronic mail system comprising:

RIM asserts that it only sells BlackBerry Pagers and the BES in the United States, which are not originating or destination processors. However, because this preamble does not limit the claims, it is not necessary to reach the issue of whether RIM provides an originating or destination processor at this juncture. It is only necessary to show that these components operate in such an electronic mail system as described in the preamble. It is undisputed that RIM supplies the BES and the BlackBerry Pagers in the United States. The BES, when integrated with Microsoft Exchange, constitutes a wireless email solution, which transmits electronic mail to a variety of constituent processors, including BlackBerry Pagers. Thus, the BES and the BlackBerry Pager are components of the electronic mail system as taught in Claim 1 and construed by this Court in its Markman Order. Therefore, the BES and BlackBerry Pagers operate in an electronic mail system.

### b. Gateway Switch

■ The first limitation of Claim 15 teaches the gateway switch. This limitation claims:

at least one gateway switch in the electronic mail system, one of the at least one gateway switch receiving the originated information and storing the originated information prior to transmission of the originated information to the at least one of the plurality of destination processors;

The term "gateway switch" has been construed by this Court as "[a] processor in an electronic mail system which connects other processors in that system and has additional functions for supporting other conventional aspects of the electronic mail system such as receiving, storing, routing and/or forwarding electronic mail messages." (Markman Order at 6, ¶ 12.) RIM asserts that the BES is not a gateway switch because it does not receive and store information or connect other processors. RIM concedes that Microsoft Exchange "may" perform these functions, but because RIM does not manufacture this product, it does not provide a gateway switch. As discussed earlier, the fact that RIM does not manufacture Microsoft Exchange is of no consequence. The BES was designed and manufactured by RIM to be integrated with Microsoft Exchange.

RIM's concession that Microsoft Exchange "may" perform the gateway switch functions, establishes that the BES, as integrated with Microsoft Exchange, constitutes literal infringement of the first limitation.

### c. RF Network

██ The second limitation of Claim 15 teaches the RF network. The claim language states:

a RF information transmission network for transmitting the originated information to at least one RF receiver which transfers the originated information to the at least one of the plurality of destination processors;

RIM asserts that it does not provide an RF network or an RF receiver. Again, RIM is attempting to dodge liability for infringement simply by claiming that it does not operate an RF network or manufacture the processor in an RF receiver. As discussed previously, the BES and the BlackBerry function within an RF network such as Mobitex or DataTAC. RIM entered into contractual agreements with those network providers. The BlackBerry Pager contains a RF receiver with the Intel 386 processor which processes the information it receives. Thus, there is no genuine dispute that the purpose of the BES and the BlackBerry Pager is to allow its owner to send and receive electronic mail via a wireless, RF network. To that end, RIM cannot escape liability for infringement under § 271(f) by asserting that it does not operate or manufacture certain components of the RF system.

### d. Interface Switch

██ The third limitation of Claim 15 teaches the function of the interface switch:

at least one interface switch, one of the at least one interface switch connecting at least one of the at least one gateway switch to the RF information transmission network and transmitting the originated information received from the gateway switch to the RF information transmission network.

RIM concedes that it provides an interface switch in the form of the BlackBerry Relay. However, RIM opines that, because the Relay is located in Waterloo, Canada, and not in the United States, it does not literally infringe this limitation. RIM's argument is not persuasive. It is undisputed that RIM supplies components of its email system in the United States. Furthermore, as required by § 271(f), the combination of these components is performed outside of the United States, when the BlackBerry Relay receives electronic mail information from the BES/email server, and then sends the information to the RF network. (Mem. in Supp., Ex. 6, 28:6–9.) This constitutes direct infringement under § 271(f).

### e. Interface Switch Address Added by an Email System

██ The fourth limitation of Claim 15 states:

wherein the originated information is transmitted to the one interface switch by the one gateway switch in response to an address of the one interface switch added to the originated information at the one of the plurality of originating processors or by the electronic mail system and the originated information is transmitted from the one interface switch to the RF information transmission network with an address of the at least one of the plurality of destination processors to receive the originated information added at the originating processor, or by either the electronic mail system or the one interface switch;

RIM states that, although the BES adds an "internet address of the BlackBerry

Relay to a proprietary data packet in order to transmit the data packet to the BlackBerry Relay," the BES is not an originating processor. (Br. in Resp. at 21.) This Court has construed the term originating processor as [a]ny one of the constituent processors in an electronic mail system that prepares data for transmission through the system. (Markman Order at 5, ¶ 6.) As discussed repeatedly throughout, the BES is designed to be integrated with the Microsoft Exchange Server. Although the BES, itself, is not an originating processor, it becomes operable only when it is integrated with Microsoft Exchange, which prepares data for transmission.

### f. Transmission of Information to Different Destination Processors

The fifth limitation of Claim 15 is stated as follows:

> the electronic mail system transmits other originated information from one of the plurality of originating processors in the electronic mail system to at least one of the plurality of destination processors in the electronic mail system through a wireline transmission using the RF information transmission network.

There is no genuine issue that the BB-equipped Email System is able to transmit wireless email to the BlackBerry Pager, as well as to other constituent processors through wireline transmission, as RIM does not dispute these facts. However, RIM asserts that this limitation requires transmission of email through "dual pathways." In this argument, RIM is attempting to read a limitation into the claim that is not supported by the plain meaning of the claim. Therefore, there is no genuine dispute with respect to this limitation.

### g. Adding the Destination Processor Address

The sixth and seventh limitations of Claim 15 are as follows:

> the address of the at least on of the plurality of destination processors is an identification number of the at least on RF receiver receiving the originated information and transferring the originated information to the at least one of the plurality of destination processors and is added to the originated information by the one gateway switch

> the identification number is added to the originated information by matching an identification of the at least one of the plurality of destination processors with a stored identification of the at least one of the plurality of destination processors and adding an identification number stored with the matched identification of the at least one of the plurality of destination processors to the originated information as the identification number.

RIM's only argument with regard to the sixth limitation is that none of its products add an address of a gateway switch. RIM merely reasserts its earlier argument with respect to the first limitation of Claim 15. It is equally unpersuasive for the same reasons. RIM does not dispute any of NTP's assertions with respect to the seventh limitation. Therefore, there is no genuine dispute that these claim limitations are satisfied by RIM's products.

There is no genuine issue of material fact that the BlackBerry System, and its various components which are manufactured and sold by RIM, literally embody every claim limitation of Claim 15. Furthermore, there is no genuine dispute that RIM's activities constitute direct infringement under § 271(f). RIM supplies a substantial portion of the components of the Campana invention in the United States. The BlackBerry System could not function without the BES or the BlackBerry Pager. Thus, RIM must actively induce the combination of the BES, BlackBerry Pagers,

and the BlackBerry Relay in Canada, with existing electronic mail and RF systems, such as Microsoft Exchange, Mobitex, and DataTAC. If the combination of all these components occurred entirely within the United States, RIM would infringe the Campana invention. Therefore, RIM is liable for direct infringement under § 271(f)(1). RIM is equally liable for direct infringement under § 271(f)(2), because the BES and the BlackBerry Pager are especially made for use in the Campana invention, and it is not a "staple article or commodity of commerce suitable for noninfringing use." 35 U.S.C. § 271(f)(2).

RIM is also liable for inducement of infringement and contributory infringement under subsections (b) and (c). RIM, by advertising, offering to sell, and selling the BES and BlackBerry Pagers, knowingly and intentionally induced others to infringe the Campana patents. Furthermore, RIM is liable for contributory infringement because, as already discussed, the BES and the BlackBerry was especially made and adapted for use in practicing the Campana patents. Therefore, NTP is entitled to summary judgment of infringement of Claim 15 of the '960 Patent.

### B.

RIM filed a Cross–Motion for Partial Summary Judgment, arguing that it should be granted summary judgment because each of the four claims asserted in NTP's Motion for Partial Summary Judgment require at least two common limitations, neither of which are present in any device manufactured by RIM. Specifically, RIM asserts that these claims require that "an RF receiver (or wireless device) transfer information to a *separate* destination processor (or other type of processor) for further processing by an application program." (Memorandum in Opposition to NTP's Motion for Summary Judgment

("Mem. in Opp'n") at 23.) RIM also asserts that all of the claims require that the sender of an electronic mail message provide the identification of the destination processor and information indicating that a choice has been made to send the email via the RF network, in order to send an email message over the wireless network. (*Id.* at 29.) Both of RIM's assertions will be discussed in turn.

### 1. The "Separability Requirement"

 RIM notes that the "Best Mode" section of the '960 Patent, contains the following statement:

> An important aspect of the present invention is that reception and review of electronic mail can be performed without connection of the RF receiver 119 to the destination processor A—N which permits the receiver to function as a mobile electronic mail receiver.

('960 Patent, 23:48–52.) RIM maintains that the "without connection" clause indicates that the RF receiver must transmit information to a separately contained destination processor (hereinafter referred to as the "separability requirement"). RIM argues that each of the asserted claims in NTP's Motion for Summary Judgment must be interpreted to have this "separability requirement" as a limitation because it is a fundamental aspect of the Campana inventions. RIM then asserts that it is undisputed that it does not provide an RF receiver which transmits information to a separate and distinct destination processor. RIM's argument is premised on the construction of this particular language of the specification.

The Federal Circuit in *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed.Cir.2001), which is cited as support by RIM, interpreted the cited language of the specification of the patent-at-issue before reaching any

conclusion about its limitation. The Federal Circuit held that the specification clearly indicated that the claims of the patent-in-suit encompassed coaxial lumen (i.e. "passageway") arrangement in a device used for coronary angioplasty procedures. *Id.* at 1343. The Court noted that, at that time, there were only two known methods of lumen arrangement: coaxial, where the guide wire lumen was inside the inflation lumen, and dual, where the guide wire lumen and the inflation lumen were side-by-side. *Id.* at 1339. The language of the specification of the patent-in-suit contained the words "an inner core tube ... with an outer sleeve ...." *Id.* at 1343. Clearly, in light of the fact that there were only two known methods of lumen arrangement in the art at the time, the Court's construction that the specification only contemplated coaxial lumen arrangement was a fair interpretation of the language in the specification. RIM asks this Court to make a similar interpretation of the cited specification language of the '960 Patent. However, such an interpretation of the cited portion of the specification in this case, unlike that in *SciMed Life Sys.*, would deviate from its plain and ordinary meaning.

■ As NTP notes, this issue was argued and briefed by both parties during the Markman claim construction phase of this litigation, where RIM advanced its argument that the RF receiver and destination processor must be separate devices. (Br. of Def. RIM Regarding Claim Constr. at 27–29.) In its Markman Brief and the Markman hearing, NTP argued that RIM sought to read a preferred embodiment of the Campana invention into the claims. (Markman Tr. at 16:14–17:13; NTP's Claim Const. Mem. at 26–27.) This argument is supported by the Federal Circuit's holding in *Teleflex, Inc.*, where the Court held that the number of embodiments disclosed in a patent's specification is not determinative of the meaning of disputed claim terms, and an accused infringer can-

not overcome the heavy presumption that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history. *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir.2002). Furthermore, simply because "claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *Id.* at 1326 (citing *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed.Cir.1983)). RIM refers to various portions of the language of the asserted claims, none of which carry the plain and ordinary meaning that the RF Receiver be separate from the destination processor.

This Court rejects this reading of the asserted claims, as reflected in the Markman Order. Indeed, the construction of neither "destination processor" nor "RF receiver" includes any language with regards to the "separability requirement." Furthermore, RIM asks this Court to read something into the specification that is not clearly indicated on its face. The language of the specification must be given its plain and ordinary meaning unless it is clear that the inventors intended that a certain word or words be given a meaning other than their plain meaning. *Teleflex, Inc.*, 299 F.3d at 1325. There is no language in any of the asserted claims that can be reasonably read to require that the RF receiver and the destination processor are to be housed separately. For example, RIM notes that Claim 15 of the '960 Patent requires "one RF receiver which transfers the originated information to the [sic] at least one of the plurality of destination processors." ('960 Patent, 49:14–17.) RIM asserts that because Claim 15 states that the information is "transferred" from the RF receiver to the destination processor, this indicates that these two components must be separate and distinct. It also

argues that this Court's Markman Order, which did not include any language that the RF receiver and the destination processor could be in a single physical housing, supports this argument. The "single physical housing" language was asserted as a suggested construction of "RF receiver" by NTP in its Claim Construction Statement. The Court adopted all of NTP's suggested construction of "RF receiver" except for this language. However, RIM cannot infer that, as a result, the RF receiver *must* be in a separate physical housing from the destination processor. Therefore, summary judgment is not appropriate on this ground.

### 2. *Provision of an RF Indicator*

■ RIM next argues that all of the asserted claims require that, in order to send email over the RF network, the sender must identify the destination processor and indicate that the sender wishes to transmit the message by way of the RF network. RIM asserts that, because the Accused System does not require a separate identifier to send email via the RF network, it is entitled to summary judgment for noninfringement of the asserted claims. NTP argues that, once again, RIM is seeking to reassert an issue that was heard and rejected by the Court during the Markman phase of this case. During the Markman hearing, NTP asserted that the indication of whether the sender wanted the email message to be transmitted via the RF network was *one* of seven different ways that an email address can be added to the message so that it may reach the desired recipient. (Markman Tr. 11:11–12:5.) In addition, NTP referred to statements in the specification of the '960 Patent, which describe the various different methods of adding the email address to the transmitted messages. ('960 Patent, 20:3–24; 22:10–44.)

Furthermore, in its Markman Brief, RIM suggested that the Court interpret the definition of "originated information" to include "an indication that the message is to be sent via the RF information transmission network." (Br. of Def. RIM Regarding Claim Constr. at 17.) This Court declined to include this language in the Markman Order. The specifications of the '960, '592, and '451 Patents do not limit the asserted claims only to the transmission of email with an indication that the message is to be sent through the RF network. Therefore, summary judgment cannot be granted on this ground, either.

### IV.

There is no genuine issue of material fact that Defendant RIM infringed Claim 248 of the '451 Patent, Claims 150 and 653 of the '592 Patent, and Claim 150 of the '960 Patent. Accordingly, Plaintiff NTP's Motion for Partial Summary Judgment is GRANTED. RIM's Cross–Motion is predicated on the construction of claim terms that deviate from their plain and ordinary meaning. Accordingly, Defendant RIM's Cross–Motion for Partial Summary Judgment is DENIED.